UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | | |
|---|---|---|
| BINH HOA LE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | |
| | § | |
| EXETER FINANCE CORP. and ENZO | § | |
| PARENT, LLC, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' INDEX OF STATE COURT DOCUMENTS

Pursuant to Local Rule 81.1, Defendants Exeter Finance Corp. and Enzo Parent, LLC, hereby submit the following index of documents. True and correct copies of these documents are attached.

1. Dallas County District Clerk Docket Sheet as of 12/01/2015

2. Plaintiff's Original Petition                                    October 2, 2015

3. Letter to File                                                          October 6, 2015

4. Plaintiff's First Amended Petition                          October 16, 2015

5. Return of Service                                                   October 20, 2015

6. Return of Service                                                   October 20, 2015

7. Defendants' Special Exceptions and Original Answer    October 30, 2015

8. Plaintiff's Second Amended Petition                       November 24, 2015

EXHIBIT
A

Respectfully submitted,

**R. ROGGE DUNN**
State Bar No. 06249500
Email:  dunn@clousedunn.com
**GREGORY M. CLIFT**
State Bar No. 00795835
Email:  gclift@clousedunn.com
**CLOUSE DUNN LLP**
1201 Elm St., Suite 5200
Dallas, Texas 75270-2142
Telephone:      (214) 220-3888
Facsimile:      (214) 220-3833

**ATTORNEYS FOR DEFENDANTS**


**CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of this document was served this 1st day of

December, 2015, as follows:


Levi G. McCathern                                ☑ **VIA ECF**
Matthew S. Muckleroy                      ☐ **VIA OVERNIGHT**
MCCATHERN, P.L.L.C.                         ☐ **VIA FIRST CLASS MAIL**
Regency Plaza                                      ☐ **VIA FAX   214-741-4717**
3710 Rawlins, Suite 1600                 ☐ **VIA EMAIL:**
Dallas, TX  75219                                    **LMCCATHERN@MCCATHERNLAW.COM**
                                                               ☐ **VIA EMAIL:**
                                                                    **MMUCKLEROY@MCCATHERNLAW.COM**
                                                               ☐ **VIA CERTIFIED MAIL, RRR**


**GREGORY M. CLIFT**

Skip to Main Content  Logout  My Account  Search Menu  New Civil District Search  Refine Search  Back          Location : All District Civil Courts  Images Help

# REGISTER OF ACTIONS
## CASE NO. DC-15-12151

| | | |
|---|---|---|
| **BINH LE vs. EXETER FINANCE CORP, et al** | §<br>§<br>§<br>§<br>§ | Case Type: **OTHER (CIVIL)**<br>Date Filed: **10/02/2015**<br>Location: **191st District Court** |

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| **DEFENDANT** | **ENZO PARENT LLC** | **A DAVID GROSS**<br>*Retained*<br>214-953-6000(W) |
| **DEFENDANT** | **EXETER FINANCE CORP** | **A DAVID GROSS**<br>*Retained*<br>214-953-6000(W) |
| **PLAINTIFF** | **LE, BINH HOA** | **MATTHEW S. MUCKLEROY**<br>*Retained*<br>214-741-2662(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 10/02/2015 | **NEW CASE FILED (OCA) - CIVIL** |
| 10/02/2015 | **ORIGINAL PETITION** |
| | *Petition* |
| 10/06/2015 | **CORRESPONDENCE - LETTER TO FILE** |
| | *Request* |
| 10/06/2015 | **ISSUE CITATION** |
| | *CALL JENNIFER DOUGLAS WHEN CITATIONS ARE READY. LEAVE MESSAGE IF SHE IS NOT AVAILABLE 214.443.4476. SLA* |
| 10/08/2015 | **CITATION** |
| | *ATTY/AM* |

| | | | |
|---|---|---|---|
| | EXETER FINANCE CORP | Served | 10/13/2015 |
| | | Returned | 10/20/2015 |
| | ENZO PARENT LLC | Served | 10/13/2015 |
| | | Returned | 10/20/2015 |

| | |
|---|---|
| 10/16/2015 | **AMENDED PETITION** |
| | *Amended Filing* |
| 10/16/2015 | **ISSUE CITATION** |
| 10/20/2015 | **CITATION** |
| | *AMND PET----ATTY/AM* |

| | | |
|---|---|---|
| | EXETER FINANCE CORP | Unserved |
| | ENZO PARENT LLC | Unserved |

| | |
|---|---|
| 10/20/2015 | **RETURN OF SERVICE** |
| | *OFFICER'S RETURN* |
| 10/20/2015 | **RETURN OF SERVICE** |
| | *AFFIDAVIT OF SERVICE* |
| 10/30/2015 | **SPECIAL EXCEPTIONS** |
| | *AND ORIG ANSWER* |
| 10/30/2015 | **ORIGINAL ANSWER - GENERAL DENIAL** |
| 11/24/2015 | **AMENDED PETITION** |
| | *PLAINTIFFS 2ND* |

---

### FINANCIAL INFORMATION

| | | | | |
|---|---|---|---|---|
| | **PLAINTIFF** Le, Binh | | | |
| | Total Financial Assessment | | | 12.00 |
| | Total Payments and Credits | | | 12.00 |
| | **Balance Due as of 12/01/2015** | | | **0.00** |
| 10/06/2015 | Transaction Assessment | | | 12.00 |
| 10/06/2015 | CREDIT CARD - TEXFILE<br>(DC) | Receipt # 59679-2015-DCLK | Le, Binh | (12.00) |

| | | |
|---|---|---|
| | **PLAINTIFF** LE, BINH HOA | |
| | Total Financial Assessment | 349.00 |

|  |  |  |  | 349.00 |
|---|---|---|---|---|
| **Total Payments and Credits** |  |  |  |  |
| **Balance Due as of 12/01/2015** |  |  |  | **0.00** |
| 10/06/2015 | Transaction Assessment |  |  | 303.00 |
| 10/06/2015 | CREDIT CARD - TEXFILE (DC) | Receipt # 59569-2015-DCLK | Le, Binh | (303.00) |
| 10/19/2015 | Transaction Assessment |  |  | 46.00 |
| 10/19/2015 | CREDIT CARD - TEXFILE (DC) | Receipt # 61999-2015-DCLK | LE, BINH HOA | (46.00) |

FILED
DALLAS COUNTY
10/2/2015 3:35:36 PM
FELICIA PITRE
DISTRICT CLERK

Freeney Anita

CAUSE NO. _____

DC-15-12151

| | | |
|---|---|---|
| BINH HOA LE, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| EXETER FINANCE CORP. and ENZO | § | J-191ST ____ JUDICIAL DISTRICT |
| PARENT, LLC, | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Binh Hoa Le ("Plaintiff" or "Le"), and files this *Plaintiff's Original Petition* (the "Petition")*,* complaining of Defendants Exeter Finance Corp. ("Exeter") and Enzo Parent, LLC ("Enzo," collectively with Exeter, the "Defendants"); and in support thereof would show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.      Pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.3, Plaintiff intends that discovery be conducted in this lawsuit under Level 2.

### II.
### RULE 47 DISCLOSURE

2.      Pursuant to TEXAS RULE OF CIVIL PROCEDURE 47(c), Plaintiff states that he is seeking monetary relief over $1,000,000.

---

### III.
### PARTIES

3.     Plaintiff **BINH HOA LE** is an individual, who resided in Tarrant County at the time the causes of action accrued, and who may be served with process through the undersigned counsel.

4.     Defendant **EXETER FINANCE CORP.** is a Texas for-profit corporation, with its principal office located in Dallas County, Texas at 222 W. Colinas Blvd. Suite 1800, Irving, Texas 75039, and which may be served by and through its registered agent, Walter E. Evans, located at the same address.

5.     Defendant **ENZO PARENT, LLC** is a foreign (DE) limited liability company, not registered to transact business in the State of Texas through the Texas Secretary of State. Defendant Enzo may be served with process by and through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, or by and through its president, Tom Anderson, at 222 W. Colinas Blvd. Suite 1800, Irving, Texas 75039.

### IV.
### JURISDICTION AND VENUE

6.     The Court has jurisdiction in this case because the damages sought are within the jurisdictional limits of the Court.

7.     Venue is proper in Dallas County, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), because it is the county in which all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.  Venue is also proper in Dallas County, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3), because it is the county of Defendant Exeter's principal office in this state.

## V.
## FACTUAL BACKGROUND

8.      Defendant Exeter is a subprime auto lender that buys loans from more than 10,000 franchised U.S. dealerships.   Exeter, formed in April 2006, engages in the purchasing, securitization and servicing of nonprime consumer automobile installment sale contracts. Upon information and belief, Defendant Enzo is the parent holding company of Exeter.

9.      In or around June 2013, Exeter recruited Plaintiff to serve as the head of its Human Resources department with the title of Chief Human Resources Officer (CHRO).  Plaintiff and Exeter executed a certain July 25, 2013 agreement (the "Employment Agreement").  Among other things, the Employment Agreement provided Plaintiff with the following compensation package:

- "Profits interest units in the parent company of Exeter Finance Corp., reserved for Executive Team Members, subject to vesting, performance and other terms and conditions set forth in a management profits interest unit agreement.

- As a Key Employee, you will qualify for a Severance and Non-compete Agreement that pays, subject to certain terms and conditions, an aggregate amount equal to 150% of the base salary and bonus paid to the Key Employee during the one-year period immediately preceding termination without cause."

10.     In or about May 2014, Enzo and Plaintiff also entered into a certain Management Profits Interest Unit Agreement (the "Profits Interest Agreement").   The Profits Interest Agreement granted Plaintiff certain profits interest units (equaling 6% of the total profits interest units in Enzo), and provided Plaintiff with certain rights regarding the vesting of such units.

11.     On or about February 23, 2015, Exeter terminated Plaintiff's employment without cause.

12.     On March 10, 2015, Plaintiff received a correspondence from Tom Anderson, as President and CEO of Enzo, purporting to provide Plaintiff with a "Call Notice for Certain Earned

Profits Interest Units" (the "Notice").  The Notice states that Enzo "hereby exercises its Call Option to purchase 140,452 of the Time-Base Profits Interest units held by [Plaintiff]…which [] constitute all of the Earned Profits Interest Units held by you." Enzo then represented that the "fair market value of the Called Units…is $0.00."  The Notice directly violates the terms of the Profits Interest Agreement, as to the determination of fair market value of the units.

13.     Further, Exeter refuses to honor the terms of Plaintiff's compensation under the Employment Agreement, including, but not limited to, payment to Plaintiff of his severance as well as his profits interest units.

# VI.
## CAUSES OF ACTION

### COUNT 1: BREACH OF CONTRACT

14.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

15.     The agreements between Plaintiff and Defendants constitute valid and enforceable agreements in this case.  Plaintiff is a proper party to sue for a breach of the agreements.  Plaintiff performed, tendered performance of, or was excused from performing his contractual obligations. Defendants breached the agreements and Defendants' breaches caused Plaintiff's injury.

## VII.
## ATTORNEYS' FEES

16.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.  Plaintiff is entitled to recover reasonable and necessary attorneys' fees, including but not limited to recovery of attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 38.001.

## VIII.
## INTEREST

17.     Plaintiff seeks to recover pre-judgment and post-judgment interest at the maximum legal rate.

## IX.
## CONDITIONS PRECEDENT

18.     Pursuant to TEXAS RULE OF CIVIL PROCEDURE 54, all conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## X.
## REQUEST FOR DISCLOSURE

19.     Pursuant to Rule 194 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff hereby requests that Defendants disclose the information or material described in Rule 194.2(a)–(l), within the time allotted by the TEXAS RULES OF CIVIL PROCEDURE.  Said information or material shall be produced at the law offices of McCathern, PLLC, 3710 Rawlins Street, Suite 1600, Dallas, Texas 75219.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final hearing, the Court enter judgment against Defendants in the amounts set forth above, including, but not limited to the following:

(a) Actual damages in the amount determined to have been sustained by Plaintiff;

(b) Costs and expenses of this lawsuit, including reasonable attorneys' fees incurred by Plaintiff in prosecuting this action;

(c) Pre-judgment and post-judgment interest on all monetary relief sought herein at the highest rates allowed by law; and,

(d) Such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Date: October 2, 2015

Respectfully submitted,

MCCATHERN, P.L.L.C.

By:/s/ Levi G. McCathern _____
        Levi G. McCathern
        State Bar No. 00787990
        lmccathern@mccathernlaw.com
        Matthew S. Muckleroy
        State Bar No. 24066796
        mmuckleroy@mccathernlaw.com

        Regency Plaza
        3710 Rawlins, Suite 1600
        Dallas, Texas 75219
        Telephone: 214.741.2662
        Facsimile: 214.741.4717

        **ATTORNEYS FOR PLAINTIFF**

FILED
DALLAS COUNTY
10/6/2015 12:02:05 PM
FELICIA PITRE
DISTRICT CLERK

Case 3:15-cv-03839-L    Document 1-1    Filed 12/01/15    Page 11 of 60    PageID 15

# McCATHERN

Jennifer Douglas
*Legal Assistant*
jdouglas@mccathernlaw.com


October 6, 2015


**VIA E-SERVICE**

George L. Allen, Sr. Courthouse
191st Judicial District
600 Commerce Street
Dallas, TX  75202

> Re:   *Binh H. Le v. Exeter Finance Corp. and Enzo Parent, LLC;* In the 191st Judicial
>        District Court, DC-15-12151
>        Our File No. 03253.0001

Dear Clerk:

Please issue citations in regard to the above referenced matter.  I am electronically posting payment for copies per the court's request.

Please feel free to direct any questions or concerns to my attention.  I look forward to working with you on this matter.


Very truly yours,


*/s/ Jennifer Douglas*
Jennifer Douglas


/jld

FILED
DALLAS COUNTY
10/16/2015 5:07:54 PM
FELICIA PITRE
DISTRICT CLERK

David Hernandez

Case 3:15-cv-03839-L   Document 1-1   Filed 12/01/15   Page 13 of 60   PageID 17

CAUSE NO. DC-15-12151

| | | |
|---|---|---|
| BINH HOA LE, | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| EXETER FINANCE CORP. and ENZO | § | 191st JUDICIAL DISTRICT |
| PARENT, LLC, | § | |
|     Defendants. | § | |
| | § | |
| | § | |
| | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Binh Hoa Le ("Plaintiff" or "Le"), and files this *Plaintiff's First Amended Petition* (the "Petition")*,* complaining of Defendants Exeter Finance Corp. ("Exeter") and Enzo Parent, LLC ("Enzo," collectively with Exeter, the "Defendants"); and in support thereof would show the Court as follows:

## I.
## DISCOVERY CONTROL PLAN

1.      Pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.3, Plaintiff intends that discovery be conducted in this lawsuit under Level 2.

## II.
## RULE 47 DISCLOSURE

2.      Pursuant to TEXAS RULE OF CIVIL PROCEDURE 47(c), Plaintiff states that he is seeking monetary relief over $1,000,000.

## III.
## PARTIES

3.      Plaintiff **BINH HOA LE** is an individual, who resided in Tarrant County at the time the causes of action accrued, and who may be served with process through the undersigned counsel.

4.      Defendant **EXETER FINANCE CORP.** is a Texas for-profit corporation, with its principal office located in Dallas County, Texas at 222 W. Las Colinas Blvd. Suite 1800, Irving, Texas 75039, and which may be served by and through its registered agent, Walter E. Evans, located at the same address.

5.      Defendant **ENZO PARENT, LLC** is a foreign (DE) limited liability company, not registered to transact business in the State of Texas through the Texas Secretary of State. Defendant Enzo may be served with process by and through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, or by and through its president, Tom Anderson, at 222 W. Las Colinas Blvd. Suite 1800, Irving, Texas 75039.

## IV.
## JURISDICTION AND VENUE

6.      The Court has jurisdiction in this case because the damages sought are within the jurisdictional limits of the Court.

7.      Venue is proper in Dallas County, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), because it is the county in which all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.  Venue is also proper in Dallas County, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3), because it is the county of Defendant Exeter's principal office in this state.

## V.
## BRIEF FACTUAL SUMMARY

8.      Exeter induced Plaintiff to join its organization based on a series of false promises and misrepresentations.  Exeter bestowed upon Plaintiff a certain compensation package, as well as the title of EVP and Chief Human Resources Officer.  But upon Exeter's change of CEO, Plaintiff's role in the organization shifted.  Whereas before Plaintiff was building out the HR infrastructure and growing the company, new management shifted that focus and directed Plaintiff to circumvent and break employment and regulatory laws.  When Plaintiff refused to do so, Exeter fired Plaintiff.  Now, Exeter and its parent company refuse to honor their financial obligations to Plaintiff.

## VI.
## FACTUAL BACKGROUND

9.      Defendant Exeter is a subprime auto lender that buys loans from more than 10,000 franchised U.S. dealerships.  Exeter, formed in April 2006, engages in the purchasing, securitization and servicing of nonprime consumer automobile installment sale contracts. The Blackstone Group L.P. ("Blackstone"), a multinational private equity, investment banking, and alternative asset investment group headquartered in New York, New York, purchased Exeter in August 2011, making Exeter one of its portfolio companies.  Upon information and belief, Defendant Enzo is the parent holding company of Exeter.

10.     In or around June 2013, Exeter recruited Plaintiff to serve as the head of its Human Resources department with the title of Chief Human Resources Officer (CHRO).  In doing so, Exeter made a series of misrepresentations and false promises to Plaintiff, which he relied upon in deciding to join the organization.  As detailed more fully below, such misrepresentations included representations about the financial stability of the company, as well

as the compensation structure (and upside) available to Plaintiff through Exeter's profits interest equity program.

11.     Exeter initially contacted Le through an executive recruiting service.  However, Exeter's ultimate decision-maker, its Chief Executive Officer (CEO), conducted Plaintiff's interviews and ultimately extended Plaintiff's offer.  During those meetings, Exeter's CEO presented Plaintiff with an offer, which included a base salary, signing bonus, and annual target bonus, among other things.  Plaintiff initially hesitated to accept the offer, given the significant risks of joining a start-up company with an unproven track record.  However, the CEO represented to Plaintiff that he would be sufficiently protected from any downside in the form of a "standard 18-month severance" package.  The offer was memorialized in a July 25, 2013 agreement, executed by the CEO and Plaintiff (the "Employment Agreement").   The Employment Agreement also provided Plaintiff with the following compensation package:

- "Profits interest units in the parent company of Exeter Finance Corp., reserved for Executive Team Members, subject to vesting, performance and other terms and conditions set forth in a management profits interest unit agreement.

- As a Key Employee, you will qualify for a Severance and Non-compete Agreement that pays, subject to certain terms and conditions, an aggregate amount equal to 150% of the base salary and bonus paid to the Key Employee during the one-year period immediately preceding termination without cause."

12.     This "standard severance and non-compete agreement" provided that so long as Plaintiff was not terminated for "cause," Exeter would pay Plaintiff "150% of [his] last 12 months' salary plus bonus payable over 18 months."

13.     As to the "profits interest units," the CEO presented Plaintiff with a spreadsheet indicating the projected value of said units "given certain exit valuations."  The CEO reinforced and reiterated to Le that the company was on track to meet certain financial targets, and he projected that Plaintiff, as CHRO, would be entitled to profits interest units worth $5,013,517,

at such time.  Exeter's General Counsel also forwarded to Plaintiff a "summary" of the profits interest units program.  Based on these representations, among others, Plaintiff executed the Employment Agreement and walked away from a multi-million dollar equity plan with his prior employer.

14.     On August 1, 2013, Plaintiff began his employment with Exeter as CHRO.  After several months of employment, in or around October 2013, Exeter presented Plaintiff with a certain severance, non-solicitation, non-competition and release agreement (the "Severance Agreement").  The Severance Agreement contained many provisions not previously disclosed to Plaintiff, including, but not limited to, a non-solicitation clause, an arbitration clause, and a release clause.  The Severance Agreement also arguably contemplated a release of Plaintiff's claim to any profits interest units; profits interest units that still had not been properly explained to Plaintiff.  Given these new, troubling provisions, Plaintiff approached Exeter's CEO and General Counsel and expressed his concerns with the additional restrictions proposed by the Severance Agreement.  As such, Plaintiff refused to execute the Severance Agreement and advised Exeter of the same. Exeter took no actions against Plaintiff on account of his refusal to sign the new proposed agreement.  As such, Plaintiff continued to work for Exeter under the terms of the original Employment Agreement provided to him on or about July 25, 2013.

15.     In or about May 2014, Enzo and Plaintiff also entered into a certain Management Profits Interest Unit Agreement (the "Profits Interest Agreement").  The Profits Interest Agreement granted Plaintiff certain profits interest units (equaling 6% of the total profits interest units in Enzo), and provided Plaintiff with certain rights regarding the vesting of such units.  Despite multiple requests by Plaintiff for clarity on the metrics/valuation of the profits interest units, Exeter and Blackstone refused to provide any financial details that could be used

to calculate the fair market value of such units.  But the requests for clarity did not stop with Plaintiff.  Upon information and belief, the same requests began to stream in from over one hundred (100) officers, who were also promised a share of the profits interest pool.  Upon information and belief, Exeter's CEO committed shares to these individuals during a leadership summit in November 2011 as part of a motivation and retention strategy.  Regrettably, upon information and belief, Exeter and Blackstone never intended to honor these commitments.

16.     Against this backdrop, in October 2014, Exeter underwent a management overhaul, replacing its CEO with a new CEO (the "New CEO").  Almost immediately after the New CEO's hiring, complaints began flooding into the Human Resources Department alleging unethical, inappropriate and/or illegal conduct of the New CEO and his newly hired Chief of Staff ("CoS").  Such complaints, included, but were not limited to, the following:

- Monitoring of employee email accounts and instant messaging without legitimate business purposes, including tapping into Human Resources (HR) email boxes containing private healthcare and medical records for employees;

- Empowering the CoS to sift through confidential recycling bins for the purpose of justifying improper termination actions;

- Instructing HR to misapply the company's finances for purposes of calculating employee bonuses, including, but not limited to, calculating bonus payments outside of clearly documented plan terms and conditions and moving eligible earnings from 2015 to 2014 and from 2014 to 2013, thereby inflating bonus payments for the New CEO and CoS;

- Failing to adhere to company policy regarding termination of employees;

- Using intimidation tactics to terminate executives without cause and intentionally violating employment contracts by refusing to pay agreed upon severance;

- Terminating an executive through purported "restructuring" but in actuality, freeing the space so that an unqualified CoS could take the same role;

- Mishandling severance agreements and failing to honor plan document terms and conditions for a multitude of other terminated personnel;

- Terminating a high performing employee because the New CEO and CoS did not like "the way she dressed;"

- New CEO maintaining an inappropriate relationship with a staff member and providing "over the top" preferential treatment for a direct report;

- New CEO ignoring claims brought forward against the CoS for creating a hostile work environment;

- Making unsupported, factually inaccurate accusations to purposely create divisions across departments;

- Accelerating the reduction in force (RIF) for hundreds of employees without proper notification and denying the payment of severance and bonuses to others in contradiction to plan documents and contrary to verbal and written representations made to said employees;

- Knowingly misclassifying over one hundred (100) underwriters for years and using the RIF process to eliminate the roles in an attempt to make the "issue go away"; and

- Retracting the commitment made to over one hundred (100) officers that they are eligible participants in the profits interest pool, among others.

17. Further, Exeter's New CEO instructed HR to use former employees' confidential information (social security, birth date, home address, etc.) to tap into outside networks to determine when and where those individuals went to work after leaving Exeter.  The New CEO also instructed HR to terminate a former employee's wife for retaliatory purposes because her husband went to work for a competitor, and he instructed HR to skip the standard reduction in force legal review process so employees could be targeted for termination arbitrarily without documentation of the actions taken.

18. Against this backdrop, in January 2015, the New CEO further reinforced to Plaintiff that he was a key contributor to Exeter.  The New CEO represented that Exeter's Board of Directors had approved a retention bonus for Plaintiff and a special long-term incentive

equity grant would be awarded to him and only a few other "critical talents" across the company.

19.     Meanwhile, Plaintiff escalated his concerns to Exeter and Blackstone.  But to Plaintiff's utter shock and surprise, upon information and belief, these egregious behaviors were not only condoned, they were encouraged by Blackstone and Exeter's Board of Directors.

20.     Plaintiff continued to escalate the complaints to the proper authorities, including the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC").  Plaintiff also continued to investigate the claims of improper actions by Exeter employees.  In fact, between November 1, 2014 and February 23, 2015, Plaintiff expressed his opposition to these actions to both, the New CEO, as well as Exeter's General Counsel, among others.   Specifically, Plaintiff opposed any actions taken by Exeter against other employees in violation of the TEXAS LABOR CODE, among other violations.

21.     On or about February 23, 2015, Exeter terminated Plaintiff's employment out of retaliation for raising concerns about the unethical and illegal treatment of employees.  The New CEO personally delivered the message, with General Counsel present, and advised Plaintiff that the termination was not for cause, but instead due to "philosophical differences" between Plaintiff and himself.  The New CEO then offered Plaintiff a proposed separation agreement and release, but it contained terms wholly inconsistent with those provided in the Employment Agreement.   Specifically, the severance proposal was limited to a 9.39 weeks' salary (as opposed to 150% of Plaintiff's base salary plus bonuses paid during the preceding year).  Exeter also refused to pay Plaintiff's 2014 bonus, which was earned by Plaintiff and was scheduled to be paid by March 15, 2015.  In addition, the severance agreement proposed a full

release of any claims Plaintiff would have regarding his profits interest units.  Given these offensive terms, Plaintiff refused to sign the proposed separation agreement and release.

22.     On March 10, 2015, Plaintiff received a correspondence from the New CEO, in his capacity as President and CEO of Enzo, purporting to provide Plaintiff with a "Call Notice for Certain Earned Profits Interest Units" (the "Notice").  The Notice states that Enzo "hereby exercises its Call Option to purchase 140,452 of the Time-Base Profits Interest units held by [Plaintiff]…which [] constitute all of the Earned Profits Interest Units held by you." Enzo then represented that the "fair market value of the Called Units…is $0.00."  The Notice directly violates the terms of the Profits Interest Agreement, as to the determination of fair market value of the units.

23.     On June 10, 2015, Plaintiff filed a charge of discrimination with the TWC and the EEOC on account of the unlawful retaliation as a result of his opposition to the discriminatory and retaliatory actions set forth above.  On September 28, 2015, the EEOC issued its "Notice of Right to Sue."  This action is being commenced within sixty (60) days of receiving that notice.

## VII.
## CAUSES OF ACTION

### COUNT 1: BREACH OF CONTRACT

24.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

25.     The agreements between Plaintiff and Defendants constitute valid and enforceable agreements in this case.  Plaintiff is a proper party to sue for a breach of the agreements.  Plaintiff performed, tendered performance of, or was excused from performing his

contractual obligations.  Defendants breached the agreements and Defendants' breaches caused Plaintiff's injury.

### COUNT 2: FRAUD, FRAUD IN THE INDUCEMENT, FRAUD BY NON-DISCLOSURE, AND FRAUD BY OMISSION

26.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

27.     By reason of Plaintiff's reliance on the representations and fraudulent concealment of material facts by Defendants, Plaintiff has been damaged in an amount within the jurisdictional limits of this Honorable Court.  In connection with inducing Plaintiff to provide valuable services to them, Defendants employed a scheme and common course of conduct to defraud Plaintiff.  The misrepresentations and concealment of facts set forth herein were material.

28.     Defendants knew the misrepresentations and concealment of facts set forth herein were false.  Alternatively, Defendants acted with reckless disregard as to whether the representations set forth herein were true.  Defendants misrepresented and concealed facts as set forth herein with the intent to induce Plaintiff to enter various agreements, including, but not limited to, the Employment Agreement and the Profits Interest Agreement.  Defendants misrepresented and concealed facts as set forth herein with the intent of gaining their own financial advantage to the disadvantage of Plaintiff.  Plaintiff relied upon the misrepresentations and concealment of facts set forth as herein.  Plaintiff's reliance on these representations and concealment of facts was reasonable and justifiable.

29.     Plaintiff has suffered and continues to suffer economic and non-economic losses because of the wrongful conduct of Defendants.  The amount of such losses will be determined according to proof at trial.  On information and belief, the wrongful acts of Defendants, as set

forth in this Count, were done maliciously, oppressively, and with the intent to mislead and defraud, and Plaintiff is entitled to punitive and exemplary damages to be ascertained according to proof, which is appropriate to punish and set an example of Defendants.  Accordingly, Plaintiff respectfully requests that exemplary damages be awarded against Defendants in a sum within the jurisdictional limits of this Honorable Court.

### COUNT 3: QUANTUM MERUIT/UNJUST ENRICHMENT/RESTITUTION/MONEY COUNTS/MONEY HAD AND RECEIVED

30.    Plaintiff readopts and realleges the allegations above and incorporates the same herein.

31.    Defendants unjustly received benefits at the expense of Plaintiff through their wrongful conduct.  Defendants continue to unjustly retain these benefits at the expense of Plaintiff.  It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.  Plaintiff is entitled to full restitution of all amounts in which Defendants have been unjustly enriched at Plaintiff's expense.

### COUNT 4: VIOLATIONS OF CHAPTER 21 OF TEXAS LABOR CODE

32.    Plaintiff readopts and realleges the allegations above and incorporates the same herein.

33.    Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. §§ 21.001 *et seq.*

34.    Plaintiff is an "employee" as defined by the TCHRA in Tex. Lab. Code Ann. §§ 21.002(7).

35.    Exeter is an "employer" as defined by the TCHRA in Tex. Lab. Code Ann. §§ 21.002(8).

36.     Exeter violated the TCHRA and committed an unlawful employment practice under Tex. Lab. Code Ann. § 21.055 by retaliating and/or discriminating against Plaintiff for opposing a discriminatory practice conducted by Exeter.   Exeter committed an unlawful employment practice under Tex. Lab. Code Ann. § 21.051 by discharging and/or discriminating against individuals because of race, color, disability, religion, sex, national origin and/or age of the employees.   Plaintiff opposed such actions and Exeter terminated Plaintiff due to such opposition.

37.     Exeter further violated the TCHRA and committed an unlawful employment practice under Tex. Lab. Code Ann. § 21.058 by willfully obstructing and/or preventing Plaintiff, Exeter's former Chief HR Officer, from complying with the TCHRA.

38.     As a result of these unlawful employment practices, Plaintiff is entitled to compensatory damages, including, but not limited to, back pay and interest on back pay, as well as punitive damages, as Plaintiff will show that Exeter acted with malice or with reckless indifference to the state-protected rights of the aggrieved individual.   *See* Tex. Lab. Code Ann. § 21.2585.   Plaintiff is also entitled to reasonable attorneys' fees and costs under Tex. Lab. Code Ann. § 21.259.

## VIII.
## EXEMPLARY DAMAGES

39.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

40.     Defendants' acts complained of herein were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice.   In order to punish Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future,

Plaintiff seeks recovery against Defendants for exemplary damages as provided by Chapter 41 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE as well as Tex. Lab. Code Ann. § 21.2585.

<div align="center">

**IX.**
**ATTORNEYS' FEES**

</div>

41.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.  Plaintiff is entitled to recover reasonable and necessary attorneys' fees, including but not limited to recovery of attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 38.001 and Tex. Lab. Code Ann. § 21.259.

<div align="center">

**X.**
**INTEREST**

</div>

42.     Plaintiff seeks to recover pre-judgment and post-judgment interest at the maximum legal rate.

<div align="center">

**XI.**
**CONDITIONS PRECEDENT**

</div>

43.     Pursuant to TEXAS RULE OF CIVIL PROCEDURE 54, all conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

<div align="center">

**XII.**
**REQUEST FOR DISCLOSURE**

</div>

44.     Pursuant to Rule 194 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff hereby requests that Defendants disclose the information or material described in Rule 194.2(a)–(l), within the time allotted by the TEXAS RULES OF CIVIL PROCEDURE.  Said information or material shall be produced at the law offices of McCathern, PLLC, 3710 Rawlins Street, Suite 1600, Dallas, Texas 75219.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final hearing, the Court enter judgment against Defendants in the amounts set forth above, including, but not limited to the following:

(a) Actual damages in the amount determined to have been sustained by Plaintiff;

(b) Costs and expenses of this lawsuit, including reasonable attorneys' fees incurred by Plaintiff in prosecuting this action;

(c) Exemplary damages as required by law;

(d) Pre-judgment and post-judgment interest on all monetary relief sought herein at the highest rates allowed by law; and,

(e) Such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Date: October 16, 2015

               Respectfully submitted,

               MᴄCᴀᴛʜᴇʀɴ, P.L.L.C.


               By:*/s/ Levi G. McCathern*_____
                    Levi G. McCathern
                    State Bar No. 00787990
                    lmccathern@mccathernlaw.com
                    Matthew S. Muckleroy
                    State Bar No. 24066796
                    mmuckleroy@mccathernlaw.com

                    Regency Plaza
                    3710 Rawlins, Suite 1600
                    Dallas, Texas 75219
                    Telephone: 214.741.2662
                    Facsimile: 214.741.4717

               **ATTORNEYS FOR PLAINTIFF**

FILED
DALLAS COUNTY
10/20/2015 11:14:07 AM
FELICIA PITRE
DISTRICT CLERK

Dianne Coffey

## CAUSE NO. DC-15-12151

| | | |
|---|---|---|
| **BINH HOA LE,** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **Vs.** | § | |
| | § | **191ˢᵗ DISTRICT COURT** |
| **EXETER FINANCE CORP, and ENZO** | § | |
| **PARENT, L.L.C.,** | § | |
| | § | |
| | § | |
| *Defendant(s).* | § | **DALLAS COUNTY, TEXAS** |

### <u>AFFIDAVIT OF SERVICE</u>

I, **Kevin Christian Gowins,** having been first duly sworn do state the following that:

I am over the age of eighteen years and have no interest in the outcome of the above referenced cause.

All of the facts stated herein are true and correct.

On October 12, 2015, at 1:44 p.m., I received a Citation with Plaintiff's Original Petition and Plaintiff's First Requests for Production to Defendants to be delivered to Exeter Finance Corp by serving its registered agent Walter E. Evans 222 W. Las Colinas Blvd Suite 1800 Irving, Texas 75039.

On October 13, 2015, at 10:43 a.m., the above-referenced documents were delivered to Exeter Finance Corp c/o Walter E. Evans its registered agent 222 W. Las Colinas Blvd Suite 1800, Texas 75039, personally

Further Affiant saith not.

Kevin Christian Gowins SCH0000005899
EXPIRES: October 31, 2015

Signed and sworn to by the said **Kevin Christian Gowins** before me this 13ᵗʰ day of October, 2015 to certify which witness my hand and seal of office.

*Paula R. Clark*

Paula R. Clark
Notary Public in and for the State of Texas
My Commission Expires: August 20ᵗʰ, 2016
Notary Public *Dallas* County *Texas*



PAULA R. CLARK
Notary Public
STATE OF TEXAS
My Comm. Exp. August 20, 2016

FILED
DALLAS COUNTY
10/20/2015 11:08:52 AM
FELICIA PITRE
DISTRICT CLERK

**FORM NO. 353-3 - CITATION**
# THE STATE OF TEXAS

To:

**ENZO PARENT LLC**
**BY SERVING ITS REGISTERED AGENT THE CORPORATION TRUST COMPANY**
**CORPORATION TRUST CENTER**
**1209 ORANGE STREET**
**WILMINGTON DE 19801**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written
answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty days after you were served this citation and petition, a default judgment may be
taken against you. Your answer should be addressed to the
clerk of the **191st District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **BINH HOA LE**

Filed in said Court **2nd day of October, 2015** against

**EXETER FINANCE CORP. AND ENZO PARENT LLC**

For Suit, said suit being numbered **DC-15-12151,** the nature of which demand is as follows:
Suit on **OTHER (CIVIL)** etc. as shown on said petition **REQ FOR DISCLOSURE,**
a copy of which accompanies this citation. If this citation is not served, it shall be returned
unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 8th day of October, 2015.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By: _ALTHA MILES_ , Deputy
ALTHA MILES

| ATTY |
| --- |
| **CITATION** |
| **DC-15-12151** |

**BINH HOA LE**
**vs.**
**EXETER FINANCE CORP, et al**

ISSUED THIS
**8th day of October, 2015**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: ALTHA MILES, Deputy

**Attorney for Plaintiff**
MATTHEW S. MUCKLEROY
REGENCY PLAZA
3710 RAWLINS
SUITE 1600
DALLAS TX 75219
214-741-2662

DALLAS COUNTY CONSTABLE
FEES          FEES NOT
PAID          PAID

## OFFICER'S RETURN

Case No. : DC-15-12151

Court No.191st District Court

Style: BINH HOA LE

vs.

EXETER FINANCE CORP, et al

Came to hand on the ___13___ day of ___October___, 20 _15_ , at _1:00_ o'clock _P_ .M. Executed at _1209 Orange St, Wilmington DE 19801_ within the County of _New Castle_ at _3:26_ o'clock _P_ .M. on the _13_ day of _October_,

20 _15_ , by delivering to the within named

_Amy McLaren, Managing Agent at Corporation Trust Co, as Registered Agent for Enzo Parent, L.L.C._

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:  To certify which witness my hand.

| | | |
|---|---|---|
| For serving Citation | $_____ | |
| For mileage | $_____ | of _New Castle_ County, _Delaware_ |
| For Notary | $_____ | By _Daniel Newcomb_   ~~Deputy~~ Process Server |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _Daniel Newcomb_ before me this _14_ day of _October_ , 20_15_ ,

to certify which witness my hand and seal of office.

Notary Public _New Castle_ County _Delaware_

KIMBERLY J. RYAN
COMMISSION
EXPIRES
MAY 17, 2016
NOTARY PUBLIC
STATE OF DELAWARE

FILED
DALLAS COUNTY
10/30/2015 5:04:32 PM
FELICIA PITRE
DISTRICT CLERK

CAUSE NO. DC-15-12151

| | | |
|---|---|---|
| BINH HOA LE, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | 191st JUDICIAL DISTRICT |
| | § | |
| EXETER FINANCE CORP. and ENZO | § | |
| PARENT, LLC, | § | |
| | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## DEFENDANTS' SPECIAL EXCEPTIONS AND ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Exeter Finance Corp. and Enzo Parent, LLC, (hereinafter collectively "Defendants"), Defendants in the above-styled and numbered cause (hereinafter this "Action") and pursuant to the Texas Rules of Civil Procedures (hereinafter the "Rules") files this response to Plaintiff's Original Petition and in response to Plaintiff's First Amended Petition filed by Binh Hoa Le (hereinafter "You" or "Plaintiff") and would show the Court as follows:

### I.  SPECIAL EXCEPTIONS

1.  Special exception is made to the allegations contained in Paragraph 2 of Plaintiff's First Amended Petition, which states:

"Plaintiff seeks monetary relief of over $1,000,000.00."

2.   Objection is made to this pleading because it is vague and general and does not specify the maximum amount of damages sought in this Action--as required by the Rules.

3.   Special exception is made to the allegations contained in Paragraph 8 of Plaintiff's First Amended Petition, which states:

> "Exeter induced Plaintiff to join its organization based on a series of false promises and misrepresentations."

4.   Objection is made to this pleading because it is vague, overly broad and general and does not sufficiently identify the facts and basis supporting Plaintiff's allegations and the pleadings.  Further, it does not specify the alleged false promises and misrepresentations.  On its face, the Petition does not describe with sufficient particularity the facts and circumstances supporting the allegations made in this portion of the Petition.  Plaintiff should be required to give specifics of the alleged false promises and misrepresentations.

5.   Therefore, the Petition should be amended to correct this defect.  Request is made that this Court set this Special Exception for hearing and upon hearing, the Court enter an Order requiring the Petition to be repled within a reasonable time in conformity with the Court's ruling and that these pleadings be dismissed if not timely and properly repled.

6.   Special exception is made to the allegations contained in Paragraph 10 of Plaintiff's First Amended Petition, which states:

> "In doing so, Exeter made a series of misrepresentations and false promises to Plaintiff, which he relied upon in deciding to join the organization."

7.   Objection is made to this pleading because it is vague, overly broad and general and does not sufficiently identify the facts and basis supporting Plaintiff's allegations and the pleadings.  Further, it does not specify the alleged <u>series</u> of false promises and misrepresentations.  On its face, the

Petition does not describe with sufficient particularity the facts and circumstances supporting the allegations made in this portion of the Petition.

8.   Therefore, the Petition should be amended to correct this defect.  Request is made that this Court set this Special Exception for hearing and upon hearing, the Court enter an Order requiring the Petition to be repled within a reasonable time in conformity with the Court's ruling and that these pleadings be dismissed if not timely and properly repled.

9.   Special exception is made to the allegations contained in Paragraph 15 of Plaintiff's First Amended Petition, which states:

> "Upon information and belief, the same requests began to stream in from over one hundred (100 officers, who were also promised a share of the profits interest pool."

10. Objection is made to this pleading because it is vague, overly broad and general and does not sufficiently identify the facts and basis supporting Plaintiff's allegations and the pleadings.  Further, it does not specify who made these alleged requests.  On its face, the Petition does not describe with sufficient particularity the facts and circumstances supporting the allegations made in this portion of the Petition.  Plaintiff should Identify the individuals who allegedly made these requests.

11. Therefore, the Petition should be amended to correct this defect.  Request is made that this Court set this Special Exception for hearing and upon hearing, the Court enter an Order requiring the Petition to be repled within a reasonable time in conformity with the Court's ruling and that these pleadings be dismissed if not timely and properly repled.

12. Special exception is made to the allegations contained in Paragraph 43 of Plaintiff's First Amended Petition, which states that: "…all conditions precedent to Plaintiff's claims for relief have been performed or have occurred."

13. Objection is made to this pleading because it is vague overly broad and general and does not sufficiently identify the facts and basis supporting Plaintiff's allegations and the pleadings. Further, it does not specify which conditions precedent have been performed or have occurred. And, it fails to specify how You satisfied said conditions precedent. On its face, the Petition does not describe with sufficient particularity the facts and circumstances supporting the allegations made in this portion of the Petition.

## ORIGINAL ANSWER

14. Defendants deny each and every, all and singular, of the allegations in Your Original Petition and Your First Amended Petition and demand strict proof thereof.

## DEFENSES

15. Answering further, Your negligence solely caused, or contributed to cause, the incident made the basis of this suit and any damages sustained thereby. This is plead in bar or reduction, as appropriate, of Your damages, if any. See V.A.T.S., Civil Practice and Remedies Code 833.001, *et seq.*

16. Your injuries, if any, were pre-existing and not caused by any act or omission of Defendants.

17. Defendants assert that they are entitled to a setoff or credit for any amounts received by Plaintiff or to be received by Plaintiff from any other source whatsoever with respect to any recovery

of such Plaintiff arising out of any claims and/or allegations asserted by any Plaintiff against any other person or party. Such would include but not be limited to any settlement and/or compromise and/or any damages paid as a result of bankruptcy and/or other litigation.

18. In the alternative, Defendants adopt by reference each defense not hereinabove alleged, if any, that may be alleged in any pleading by any other defendant or third-party defendant to this lawsuit, heretofore or hereafter filed.

## STATUTORY CAPS

19. Liability for any punitive and mental anguish damages You seek in this Action are capped.

20. The affirmative defense of statutory caps is pled. If You can somehow recover on Your for discrimination, harassment and/or retaliation claims, Your damages, if any, are statutorily capped as provided in Title VII of the U.S. Code and/or Section 21.2585 of the Texas Labor Code, Section 41.008 of the Texas Civil Practice and Remedies Code and any other applicable laws and statutes.

21. The affirmative defense of statutory caps on punitive damages is pled. Even if You can somehow recover punitive damages, such damages, if any, are statutorily capped as provided in Title VII of the U.S. Code and/or Section 41.008 of the Texas Civil Practice and Remedies Code and Section 21.2585 of the Texas Labor Code and/or other laws and statutes.

## SPECIFIC DEFENSES TO PUNITIVE DAMAGES

22. As a further defense, Defendants plead the following defenses to Plaintiff' claims for punitive damages:

**Unconstitutional.** Even as limited by 841.007, Texas Practice and Remedies Code or other applicable legal principal of law, punitive damages as structured in Texas are unconstitutional.

violating the Fifth and Fourteenth Amendments to the United States Constitution, in seeking to deprive Defendant of due process or due course of law;

violating the Eighth Amendment to the United States Constitution, by seeking to impose what is, or what in effect is, an excessive fine;

violating Article 1, Sections 13 and 19 of the Texas Constitution, in seeking to deprive Defendant of due process or due course of law;

violating the Fourteenth Amendment to the United States Constitution, in seeking to deny Defendant equal protection of the laws of the United States;

violating Article 1, Section 3 of the Texas Constitution, in seeking to deny Defendant equal rights of the State of Texas.

**Lack of Notice.** The punitive damages provisions of Texas law fail to provide notice of proper standards whereby a defendant is advised that by failing to exercise ordinary care, unknown parties at a later date may deprive the defendant of unspecified, non-compensatory damages at mere discretion, without guidance of proper standards.

**Standard.** Alternatively, any non-compensatory, punitive damages, if awarded at all, should be based upon improper, knowing conduct proved by evidence meeting a clear and convincing standard of proof, beyond a reasonable doubt, or some such similar standard above the present low preponderance of the evidence standard for assessing negligence and compensatory damages. There is an absence of even basic protection normally given even the most heinous criminal.

**No proper function.** Punitive damages do not serve any function now appropriate in the context of a case for civil damages, in that Texas law provides full compensatory damages for every element for which a party is entitled.

**Windfall.**  Punitive damages are just that, punishment damages.  The criminal law of the State of Texas provides the appropriate function to punish any wrongful conduct, and no purpose is served by removing punishment damages from benefitting the entire State of Texas and giving it as a windfall to a plaintiff and the plaintiff's attorney.

**No intentional, malicious and conscious misconduct.**  Punitive damages should not be awarded against Defendants without a finding of intentional, malicious and conscious misconduct; and clearly, in this case, these defendants under all the evidence are not guilty of intentional, malicious and conscious misconduct.

## AFFIRMATIVE DEFENSES

The following affirmative defenses are pled, in the alternative, to the extent necessary:

1.      The affirmative defense of accord and satisfaction is pled. Your claims are barred, in whole or part, by an accord and satisfaction.

2.      The affirmative defense of assumption of risk is pled. Your claims are barred, in whole or part, by the assumption of risk.

3.      The affirmative defense of failure of consideration is pled. Your claims are barred, in whole or part, by the failure of consideration.

4.      The affirmative defense of contributory negligence is pled. Your claims are barred, in whole or part, by Your contributory negligence.

5.      The affirmative defense of laches, waiver and estoppel is pled. Your claims are barred, in whole or part, by the doctrines of laches, estoppel and/or waiver.

6.      The affirmative defense of license is pled. Your claims are barred, in whole or part, by license.

7.    The affirmative defense of unclean hands is pled.  Your claims are barred, in whole or part, by unclean hands.

8.    The affirmative defense of failure to mitigate is pled.  You are not entitled to recover damages, if any, because You failed to mitigate Your damages.

9.    The affirmative defense of the parole evidence rule is pled as barring Your claim and any evidence of alleged representations made other than those contained in the contract(s) at issue in this Action. Your claims are barred, in whole or part, by the statute of frauds.

10.    The affirmative defense of ratification is pled. Your claims are barred, in whole or part, by ratification.

11.    The affirmative defense of the statute of frauds is pled. Your claims are barred, in whole or part, by the statute of frauds.

12.    The affirmative defense of statute of limitations is pled. Your claims are barred, in whole or part, by all applicable statute of limitations.

13.    The affirmative defense of failure to exhaust administrative remedies is pled. You are not entitled to recover damages, if any, because You have failed to exhaust Your administrative remedies.

14.    The affirmative defense provided for in *Faragher* is pled.  You cannot recover as alleged because Defendants are entitled to the affirmative defense that it had a policy in place to prevent or correct harassment, discrimination, retaliation and Plaintiff unreasonably failed to take advantage of it, pursuant to the holdings of the United States Supreme Court in *Faragher v. City of Boca Raton and Burlington Industries, Inc. v. Ellerth*.

15.     The affirmative defense of any other matter constituting an avoidance or an affirmative defense is pled.  Your claims are barred, in whole or part, by avoidance, or another affirmative defense.

## REQUEST FOR LEVEL III

16.     Discovery should be conducted under Level III pursuant to Texas Rule of Civil Procedure 190.4 and a Motion is hereby made for entry of a Level III Scheduling Order.

## RIGHT TO AMEND

17.     The right to further amend and/or supplement this pleading at a future date is reserved.

## JURY DEMAND

18.     Demand for a jury trial of this case is made, and has on this day the jury fee has been or will be tendered to the Clerk of this Court.

## REPORTER DEMAND

19.     Demand for an Official Court Reporter for this Court, perform all the duties of the office, as set forth in Section 52.046 of the Government Code of the State of Texas, and as set forth in Rule 13 of the Rules of Appellate Procedure, is demanded including reporting all testimony and trial proceedings, voir dire examinations and jury arguments.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, prayer is made that these Special Exceptions be set for hearing and that upon hearing, the Court enter an Order sustaining the Special Exceptions and Order the Petition to be repled within a reasonable time in conformity with this Court's ruling and those pleadings dismissed if not properly repled, further prayer is made that You take nothing by way of this Action and that Defendants recover attorneys' fees, costs and receive such other and further relief, at law or in equity against You, and such other and further relief, at law or in equity, to which Defendants may be justly entitled.

Respectfully submitted,

**R. ROGGE DUNN**
State Bar No. 06249500

**Email: dunn@trialtested.com**

**DAVID GROSS**
State Bar No. 08531200
Email: dgross@clousedunn.com

**CLOUSE DUNN LLP**
1201 Elm Street, Suite 5200
Dallas, Texas 75270-2142
Telephone:  (214) 220-3888
Facsimile:  (214) 220-3833

**ATTORNEYS FOR DEFENDANTS**

## FIAT

The foregoing Special Exceptions have been set for hearing in the Courtroom on the \_\_\_\_

day of _____, 20\_\_\_\_ at _____ o'clock \_\_\_\_\_.m.


_____
PRESIDING JUDGE

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record in accordance with the Rules, this _30ᵗʰ_ day of _October_ 20_15_ .

Levi G. McCathern, Esq.
Matthew S. Muckleroy, Esq.
McCATHERN, P.L.L.C.
Regency Plaza
3710 Rawlins, Suite 1600
Dallas, TX 75219

☒ **VIA ECF**
☐ **VIA OVERNIGHT**
☐ **VIA FIRST CLASS MAIL**
☐ **VIA FAX** 214-741-4717
☐ **VIA EMAIL:**
    **LMCCATHERN@MCCATHERNLAW.COM**
☐ **VIA EMAIL:**
    **MMUCKLEROY@MCCATHERNLAW.COM**
☐ **VIA CERTIFIED MAIL, RRR**

_____

**ROGG DUNN, ESQ.**
**DAVID GROSS, ESQ.**

<div align="center">CAUSE NO. DC-15-12151</div>

| | | |
|---|---|---|
| BINH HOA LE,<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | |
| EXETER FINANCE CORP. and ENZO<br>PARENT, LLC,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | 191st JUDICIAL DISTRICT |
| | § | DALLAS COUNTY, TEXAS |

<div align="center">**PLAINTIFF'S SECOND AMENDED PETITION**</div>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Binh Hoa Le ("Plaintiff" or "Le"), and files this *Plaintiff's Second Amended Petition* (the "Petition")*,* complaining of Defendants Exeter Finance Corp. ("Exeter") and Enzo Parent, LLC ("Enzo," collectively with Exeter, the "Defendants"); and in support thereof would show the Court as follows:

<div align="center">**I.**<br>**DISCOVERY CONTROL PLAN**</div>

1.    Pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.3, Plaintiff intends that discovery be conducted in this lawsuit under Level 2.

<div align="center">**II.**<br>**RULE 47 DISCLOSURE**</div>

2.    Pursuant to TEXAS RULE OF CIVIL PROCEDURE 47(c), Plaintiff states that he is seeking monetary relief over $1,000,000.

## III.
## PARTIES

3.      Plaintiff **BINH HOA LE** is an individual, who resided in Tarrant County at the time the causes of action accrued, and who may be served with process through the undersigned counsel.

4.      Defendant **EXETER FINANCE CORP.** is a Texas for-profit corporation, with its principal office located in Dallas County, Texas at 222 W. Las Colinas Blvd. Suite 1800, Irving, Texas 75039, and which has been served with process and has appeared in this matter.

5.      Defendant **ENZO PARENT, LLC** is a foreign (DE) limited liability company, not registered to transact business in the State of Texas through the Texas Secretary of State. Defendant Enzo has been served with process and has appeared in this matter.

## IV.
## JURISDICTION AND VENUE

6.      The Court has jurisdiction in this case because the damages sought are within the jurisdictional limits of the Court.

7.      Venue is proper in Dallas County, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), because it is the county in which all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.  Venue is also proper in Dallas County, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3), because it is the county of Defendant Exeter's principal office in this state.

## V.
## BRIEF FACTUAL SUMMARY

8.      Exeter induced Plaintiff to join its organization based on a series of false promises and misrepresentations.  Exeter bestowed upon Plaintiff a certain compensation package, as well as the title of EVP and Chief Human Resources Officer.  But upon Exeter's

change of CEO, Plaintiff's role in the organization shifted.   Whereas before Plaintiff was building out the HR infrastructure and growing the company, new management shifted that focus and directed Plaintiff to circumvent and break employment and regulatory laws.   When Plaintiff refused to do so, Exeter fired Plaintiff.   Now, Exeter and its parent company refuse to honor their financial obligations to Plaintiff.

## VI.
## FACTUAL BACKGROUND

9.       Defendant Exeter is a subprime auto lender that buys loans from more than 10,000 franchised U.S. dealerships.   Exeter, formed in April 2006, engages in the purchasing, securitization and servicing of nonprime consumer automobile installment sale contracts. The Blackstone Group L.P. ("Blackstone"), a multinational private equity, investment banking, and alternative asset investment group headquartered in New York, New York, purchased Exeter in August 2011, making Exeter one of its portfolio companies.   Upon information and belief, Defendant Enzo is the parent holding company of Exeter.

10.       In or around June 2013, Exeter recruited Plaintiff to serve as the head of its Human Resources department with the title of Chief Human Resources Officer (CHRO).   In doing so, Exeter made a series of misrepresentations and false promises to Plaintiff, which he relied upon in deciding to join the organization.   As detailed more fully below, such misrepresentations included representations about the financial stability of the company, as well as the compensation structure (and upside) available to Plaintiff through Exeter's profits interest equity program.

11.       Exeter initially contacted Le through an executive recruiting service.   However, Exeter's ultimate decision-maker, its Chief Executive Officer (CEO), conducted Plaintiff's interviews and ultimately extended Plaintiff's offer.   During those meetings, Exeter's CEO

presented Plaintiff with an offer, which included a base salary, signing bonus, and annual target bonus, among other things.  Plaintiff initially hesitated to accept the offer, given the significant risks of joining a start-up company with an unproven track record.  However, the CEO represented to Plaintiff that he would be sufficiently protected from any downside in the form of a "standard 18-month severance" package.  The offer was memorialized in a July 25, 2013 agreement, executed by the CEO and Plaintiff (the "Employment Agreement").  The Employment Agreement also provided Plaintiff with the following compensation package:

- "Profits interest units in the parent company of Exeter Finance Corp., reserved for Executive Team Members, subject to vesting, performance and other terms and conditions set forth in a management profits interest unit agreement.

- As a Key Employee, you will qualify for a Severance and Non-compete Agreement that pays, subject to certain terms and conditions, an aggregate amount equal to 150% of the base salary and bonus paid to the Key Employee during the one-year period immediately preceding termination without cause."

12.     This "standard severance and non-compete agreement" provided that so long as Plaintiff was not terminated for "cause," Exeter would pay Plaintiff "150% of [his] last 12 months' salary plus bonus payable over 18 months."

13.     As to the "profits interest units," the CEO presented Plaintiff with a spreadsheet indicating the projected value of said units "given certain exit valuations."  The CEO reinforced and reiterated to Le that the company was on track to meet certain financial targets, and he projected that Plaintiff, as CHRO, would be entitled to profits interest units worth $5,013,517, at such time.  Exeter's General Counsel also forwarded to Plaintiff a "summary" of the profits interest units program.  Based on these representations, among others, Plaintiff executed the Employment Agreement and walked away from a multi-million dollar equity plan with his prior employer.

14. On August 1, 2013, Plaintiff began his employment with Exeter as CHRO. After several months of employment, in or around October 2013, Exeter presented Plaintiff with a certain severance, non-solicitation, non-competition and release agreement (the "Severance Agreement"). The Severance Agreement contained many provisions not previously disclosed to Plaintiff, including, but not limited to, a non-solicitation clause, an arbitration clause, and a release clause. The Severance Agreement also arguably contemplated a release of Plaintiff's claim to any profits interest units; profits interest units that still had not been properly explained to Plaintiff. Given these new, troubling provisions, Plaintiff approached Exeter's CEO and General Counsel and expressed his concerns with the additional restrictions proposed by the Severance Agreement. As such, Plaintiff refused to execute the Severance Agreement and advised Exeter of the same. Exeter took no actions against Plaintiff on account of his refusal to sign the new proposed agreement. As such, Plaintiff continued to work for Exeter under the terms of the original Employment Agreement provided to him on or about July 25, 2013.

15. In or about May 2014, Enzo and Plaintiff also entered into a certain Management Profits Interest Unit Agreement (the "Profits Interest Agreement"). The Profits Interest Agreement granted Plaintiff certain profits interest units (equaling 6% of the total profits interest units in Enzo), and provided Plaintiff with certain rights regarding the vesting of such units. Despite multiple requests by Plaintiff for clarity on the metrics/valuation of the profits interest units, Exeter and Blackstone refused to provide any financial details that could be used to calculate the fair market value of such units. But the requests for clarity did not stop with Plaintiff. Upon information and belief, the same requests began to stream in from over one hundred (100) officers, who were also promised a share of the profits interest pool. Upon information and belief, Exeter's CEO committed shares to these individuals during a leadership

summit in November 2011 as part of a motivation and retention strategy.  Regrettably, upon information and belief, Exeter and Blackstone never intended to honor these commitments.

16.     Against this backdrop, in October 2014, Exeter underwent a management overhaul, replacing its CEO with a new CEO (the "New CEO").  Almost immediately after the New CEO's hiring, complaints began flooding into the Human Resources Department alleging unethical, inappropriate and/or illegal conduct of the New CEO and his newly hired Chief of Staff ("CoS").  Such complaints, included, but were not limited to, the following:

- Monitoring of employee email accounts and instant messaging without legitimate business purposes, including tapping into Human Resources (HR) email boxes containing private healthcare and medical records for employees;

- Empowering the CoS to sift through confidential recycling bins for the purpose of justifying improper termination actions;

- Instructing HR to misapply the company's finances for purposes of calculating employee bonuses, including, but not limited to, calculating bonus payments outside of clearly documented plan terms and conditions and moving eligible earnings from 2015 to 2014 and from 2014 to 2013, thereby inflating bonus payments for the New CEO and CoS;

- Failing to adhere to company policy regarding termination of employees;

- Using intimidation tactics to terminate executives without cause and intentionally violating employment contracts by refusing to pay agreed upon severance;

- Terminating an executive through purported "restructuring" but in actuality, freeing the space so that an unqualified CoS could take the same role;

- Mishandling severance agreements and failing to honor plan document terms and conditions for a multitude of other terminated personnel;

- Terminating a high performing employee because the New CEO and CoS did not like "the way she dressed;"

- New CEO maintaining an inappropriate relationship with a staff member and providing "over the top" preferential treatment for a direct report;

- New CEO ignoring claims brought forward against the CoS for creating a hostile work environment;

- Making unsupported, factually inaccurate accusations to purposely create divisions across departments;

- Accelerating the reduction in force (RIF) for hundreds of employees without proper notification and denying the payment of severance and bonuses to others in contradiction to plan documents and contrary to verbal and written representations made to said employees;

- Violating the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) for employees protected by these laws;

- Violating the Consumer Financial Protection Bureau (CFPB) compliance provisions for numerous employees and executives;

- Knowingly misclassifying over one hundred (100) underwriters for years under the Fair Labor Standards Act (FLSA) and using the RIF process to eliminate the roles in an attempt to make the "issue go away"; and

- Retracting the commitment made to over one hundred (100) officers that they are eligible participants in the profits interest pool, among others.

17.     Further, Exeter's New CEO instructed HR to use former employees' confidential information (social security, birth date, home address, etc.) to tap into outside networks to determine when and where those individuals went to work after leaving Exeter. The New CEO also instructed HR to terminate a former employee's wife for retaliatory purposes because her husband went to work for a competitor, and he instructed HR to skip the standard reduction in force legal review process so employees could be targeted for termination arbitrarily without documentation of the actions taken.

18.     Against this backdrop, in January 2015, the New CEO further reinforced to Plaintiff that he was a key contributor to Exeter. The New CEO represented that Exeter's Board of Directors had approved a retention bonus for Plaintiff and a special long-term incentive

equity grant would be awarded to him and only a few other "critical talents" across the company.

19.     Meanwhile, Plaintiff escalated his concerns to Exeter and Blackstone.  But to Plaintiff's utter shock and surprise, upon information and belief, these egregious behaviors were not only condoned, they were encouraged by Blackstone and Exeter's Board of Directors.

20.     Plaintiff continued to escalate the complaints to the proper authorities, including the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC").  Plaintiff also continued to investigate the claims of improper actions by Exeter employees.  In fact, between November 1, 2014 and February 23, 2015, Plaintiff expressed his opposition to these actions to both, the New CEO, as well as Exeter's General Counsel, among others.   Specifically, Plaintiff opposed any actions taken by Exeter against other employees in violation of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, 42 U.S.C. § 1981 and the TEXAS LABOR CODE, among other violations.

21.     On or about February 23, 2015, Exeter terminated Plaintiff's employment out of retaliation for raising concerns about the unethical and illegal treatment of employees.  The New CEO personally delivered the message, with General Counsel present, and advised Plaintiff that the termination was not for cause, but instead due to "philosophical differences" between Plaintiff and himself.  The New CEO then offered Plaintiff a proposed separation agreement and release, but it contained terms wholly inconsistent with those provided in the Employment Agreement.  Specifically, the severance proposal was limited to a 9.39 weeks' salary (as opposed to 150% of Plaintiff's base salary plus bonuses paid during the preceding year).  Exeter also refused to pay Plaintiff's 2014 bonus, which was earned by Plaintiff and was

scheduled to be paid by March 15, 2015.  In addition, the severance agreement proposed a full release of any claims Plaintiff would have regarding his profits interest units.  Given these offensive terms, Plaintiff refused to sign the proposed separation agreement and release.

22.     On March 10, 2015, Plaintiff received a correspondence from the New CEO, in his capacity as President and CEO of Enzo, purporting to provide Plaintiff with a "Call Notice for Certain Earned Profits Interest Units" (the "Notice").  The Notice states that Enzo "hereby exercises its Call Option to purchase 140,452 of the Time-Base Profits Interest units held by [Plaintiff]…which [] constitute all of the Earned Profits Interest Units held by you." Enzo then represented that the "fair market value of the Called Units…is $0.00."  The Notice directly violates the terms of the Profits Interest Agreement, as to the determination of fair market value of the units.

23.     On June 10, 2015, Plaintiff filed a charge of discrimination with the TWC and the EEOC on account of the unlawful retaliation as a result of his opposition to the discriminatory and retaliatory actions set forth above.  On September 28, 2015, the EEOC issued its "Notice of Right to Sue."  This action is being commenced within sixty (60) days of receiving that notice.

## VII.
## CAUSES OF ACTION

### COUNT 1: BREACH OF CONTRACT

24.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

25.     The agreements between Plaintiff and Defendants constitute valid and enforceable agreements in this case.  Plaintiff is a proper party to sue for a breach of the agreements.  Plaintiff performed, tendered performance of, or was excused from performing his

contractual obligations.  Defendants breached the agreements and Defendants' breaches caused Plaintiff's injury.

## COUNT 2: FRAUD, FRAUD IN THE INDUCEMENT, FRAUD BY NON-DISCLOSURE, AND FRAUD BY OMISSION

26.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

27.     By reason of Plaintiff's reliance on the representations and fraudulent concealment of material facts by Defendants, Plaintiff has been damaged in an amount within the jurisdictional limits of this Honorable Court.  In connection with inducing Plaintiff to provide valuable services to them, Defendants employed a scheme and common course of conduct to defraud Plaintiff.  The misrepresentations and concealment of facts set forth herein were material.

28.     Defendants knew the misrepresentations and concealment of facts set forth herein were false.  Alternatively, Defendants acted with reckless disregard as to whether the representations set forth herein were true.  Defendants misrepresented and concealed facts as set forth herein with the intent to induce Plaintiff to enter various agreements, including, but not limited to, the Employment Agreement and the Profits Interest Agreement.  Defendants misrepresented and concealed facts as set forth herein with the intent of gaining their own financial advantage to the disadvantage of Plaintiff.  Plaintiff relied upon the misrepresentations and concealment of facts set forth as herein.  Plaintiff's reliance on these representations and concealment of facts was reasonable and justifiable.

29.     Plaintiff has suffered and continues to suffer economic and non-economic losses because of the wrongful conduct of Defendants.  The amount of such losses will be determined according to proof at trial.  On information and belief, the wrongful acts of Defendants, as set

forth in this Count, were done maliciously, oppressively, and with the intent to mislead and defraud, and Plaintiff is entitled to punitive and exemplary damages to be ascertained according to proof, which is appropriate to punish and set an example of Defendants.  Accordingly, Plaintiff respectfully requests that exemplary damages be awarded against Defendants in a sum within the jurisdictional limits of this Honorable Court.

## COUNT 3: QUANTUM MERUIT/UNJUST ENRICHMENT/RESTITUTION/MONEY COUNTS/MONEY HAD AND RECEIVED

30.    Plaintiff readopts and realleges the allegations above and incorporates the same herein.

31.    Defendants unjustly received benefits at the expense of Plaintiff through their wrongful conduct.  Defendants continue to unjustly retain these benefits at the expense of Plaintiff.  It would be unjust for Defendants to retain any value they obtained as a result of their wrongful conduct.  Plaintiff is entitled to full restitution of all amounts in which Defendants have been unjustly enriched at Plaintiff's expense.

## COUNT 4: VIOLATIONS OF CHAPTER 21 OF TEXAS LABOR CODE AND TITLE VII OF THE CIVIL RIGHTS ACT OF 1964/42 U.S.C. § 1981, ET SEQ.

32.    Plaintiff readopts and realleges the allegations above and incorporates the same herein.

33.    Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. §§ 21.001 *et seq.*

34.    Plaintiff is an "employee" as defined by the TCHRA in Tex. Lab. Code Ann. §§ 21.002(7), as well as Title VII of the Civil Rights Act of 1964 (Title VII) at 42 U.S.C. § 2000e(f).

35.     Exeter is an "employer" as defined by the TCHRA in Tex. Lab. Code Ann. §§ 21.002(8), as well as Title VII at 42 U.S.C. § 2000e(b).

36.     Exeter violated the TCHRA under Tex. Lab. Code Ann. § 21.055 and Title VII by committing an unlawful employment practice and retaliating and/or discriminating against Plaintiff for opposing a discriminatory practice conducted by Exeter.  Exeter committed an unlawful employment practice under Tex. Lab. Code Ann. § 21.051 by discharging and/or discriminating against individuals because of race, color, disability, religion, sex, national origin and/or age of the employees.  Exeter violated 42 U.S.C. § 1981 by not allowing certain persons the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.  Plaintiff opposed such actions and Exeter terminated Plaintiff due to such opposition.

37.     Exeter further violated the TCHRA under Tex. Lab. Code Ann. § 21.058 and Title VII and committed an unlawful employment practice by willfully obstructing and/or preventing Plaintiff, Exeter's former Chief HR Officer, from complying with the TCHRA and Title VII.

38.     As a result of these unlawful employment practices, Plaintiff is entitled to compensatory damages, including, but not limited to, back pay and interest on back pay, as well as punitive damages, as Plaintiff will show that Exeter acted with malice or with reckless indifference to the state-protected rights of the aggrieved individual.  *See* Tex. Lab. Code Ann. § 21.2585.  Plaintiff is also entitled to reasonable attorneys' fees and costs under Tex. Lab. Code Ann. § 21.259, as well as 42 U.S.C. § 2000e-5(k).

**COUNT 5: VIOLATIONS OF THE FAIR LABOR STANDARDS ACT OF 1938, 29 U.S.C. 201, *ET SEQ.***

39.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

40.     Plaintiff is an "employee" as defined by the Fair Labor Standards Act of 1938 (FLSA) at 29 U.S.C. § 203(e).

41.     Exeter is an "employer" as defined by the FLSA at 29 U.S.C. § 203(d).

42.     Upon information and belief, Exeter violated the FLSA, as set forth in 29 U.S.C. § 215, by misclassifying its employees, for purposes of overtime pay.

43.     Exeter violated section 215(a)(3) of FLSA by retaliating, discharging and/or discriminating against Plaintiff for filing a complaint or instituting or causing to be instituted a proceeding related to the FLSA.

44.     Plaintiff is entitled to such legal and equitable relief, as prescribed by law, including, but not limited to, employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages, as well as attorneys' fees, in accordance with 29 U.S.C. § 216(b).

**COUNT 6: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12111, ET SEQ.**

45.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

46.     Exeter is a "covered entity" and an "employer" as defined by the Americans with Disabilities Act (ADA) at 42 U.S.C. § 12111(2) & (5).

47.     Plaintiff is an "employee" as defined by the ADA at 42 U.S.C. § 12111(4).

48.     Exeter violated section 12112(a) of the ADA by discriminating against a qualified individual(s) on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and/or other terms, conditions and privileges of employment.  Exeter violated section 12203(a) of the ADA by discriminating against Plaintiff because Plaintiff has opposed an act or practice made unlawful by the ADA or because Plaintiff made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA.

49.     As such, Plaintiff is entitled to the remedies and procedures available under sections 12117, 12133 and 12188 of the ADA, in accordance with 42 U.S.C. § 12203(c).

### COUNT 7: VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. § 621, ET SEQ.

50.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

51.     Exeter is an "employer" as defined by 29 U.S.C. § 630(b).

52.     Plaintiff is an "employee" as defined by 29 U.S.C. § 630(f).

53.     Exeter violated section 623 of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. (ADEA) by failing or refusing to hire or to discharge an individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.  Exeter further violated section 623(d) of the ADEA by discriminating against Plaintiff because he was opposed to the practice made unlawful by the ADEA or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under the ADEA.

54.     As such, Plaintiff is entitled to such legal and equitable relief as will effectuate the purposes of the ADEA, pursuant to section 626(c)(1) of the ADEA.

**COUNT 8: VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2601, ET SEQ.**

55.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

56.     Exeter is an "employer" as defined by 29 U.S.C. § 2611(4).

57.     Plaintiff is an "employee" as defined by 29 U.S.C. § 203(e).

58.     Exeter violated the Family and Medical Leave Act of 1992, 29 U.S.C. § 2601, et seq. (FMLA), by interfering with, restraining, or denying the exercise of or the attempts to exercise certain rights there under, in accordance with section 2615 of the FMLA.  Specifically, Exeter violated certain eligible employees entitlement to leave in accordance with section 2612 of the FMLA and/or the restoration of certain employees position upon return from leave in accordance with section 2614 of the FMLA.

59.     Exeter violated section 2615 of the FMLA by discharging or in any other manner discriminating against Plaintiff for opposing any practice made unlawful by the FMLA.  In accordance with 29 U.S.C. § 2615(b), Exeter violated the FMLA by discharging or in any manner discriminating against Plaintiff because Plaintiff (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to the FMLA, (2) has given, or is about to give, any information in connection with an inquiry or proceeding related to any right provided under the FMLA, or (3) has testified, or is about to testify, in any inquiry or proceeding related to any right provided under the FMLA.

60.     Plaintiff is entitled to the damages set forth in section 2617 of the FMLA, which includes damages in the amount of wages, salary, employment benefits, or other compensation

denied or lost by reason of the violation, interest at the prevailing rate, and an equal additional amount as liquidated damages, among others.  Plaintiff is also entitled to reasonable attorney's fees and costs in accordance with 29 U.S.C. § 2617(a)(3).

## VIII.
## EXEMPLARY DAMAGES

61.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.

62.     Defendants' acts complained of herein were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice.  In order to punish Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff seeks recovery against Defendants for exemplary damages as provided by Chapter 41 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, the Tex. Lab. Code Ann. § 21.2585, as well as under 29 U.S.C. § 621, et seq., 42 U.S.C. § 12111, et seq., among others.

## IX.
## ATTORNEYS' FEES

63.     Plaintiff readopts and realleges the allegations above and incorporates the same herein.  Plaintiff is entitled to recover reasonable and necessary attorneys' fees, including but not limited to recovery of attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 38.001 and Tex. Lab. Code Ann. § 21.259, 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 216(b) and 29 U.S.C. § 2617(a)(3), and 42 U.S.C. § 2000e, et seq., among others.

## X.
## INTEREST

64.     Plaintiff seeks to recover pre-judgment and post-judgment interest at the maximum legal rate.

## XI.
## CONDITIONS PRECEDENT

65.     Pursuant to TEXAS RULE OF CIVIL PROCEDURE 54, all conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## XII.
## REQUEST FOR DISCLOSURE

66.     Pursuant to Rule 194 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff hereby requests that Defendants disclose the information or material described in Rule 194.2(a)–(l), within the time allotted by the TEXAS RULES OF CIVIL PROCEDURE.  Said information or material shall be produced at the law offices of McCathern, PLLC, 3710 Rawlins Street, Suite 1600, Dallas, Texas 75219.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final hearing, the Court enter judgment against Defendants in the amounts set forth above, including, but not limited to the following:

(a)  Actual damages in the amount determined to have been sustained by Plaintiff;

(b)  Costs and expenses of this lawsuit, including reasonable attorneys' fees incurred by Plaintiff in prosecuting this action;

(c)  Exemplary damages as required by law;

(d)  Pre-judgment and post-judgment interest on all monetary relief sought herein at the highest rates allowed by law; and,

(e)  Such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Date: November 24, 2015

Respectfully submitted,

MCCATHERN, P.L.L.C.

By:/s/ Levi G. McCathern
       Levi G. McCathern
       State Bar No. 00787990
       lmccathern@mccathernlaw.com
       Matthew S. Muckleroy
       State Bar No. 24066796
       mmuckleroy@mccathernlaw.com

       Regency Plaza
       3710 Rawlins, Suite 1600
       Dallas, Texas 75219
       Telephone: 214.741.2662
       Facsimile: 214.741.4717

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this *Plaintiff's Second Amended Petition* was served upon all counsel of record in this matter on this the 24th day of November, 2015.

/s/ Matthew S. Muckleroy
Matthew S. Muckleroy