IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| BINH HOA LE, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:15-CV-3839-L** |
| | § | |
| **EXETER FINANCE CORP. and** | § | |
| **ENZO PARENT, LLC,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The court enters this memorandum opinion and order to address Plaintiff Binh Hoa Le's ("Plaintiff" or "Le") remaining quantum meruit claim. On March 31, 2019, the court granted the summary judgment filed by Defendants Exeter Finance Corp. ("Exeter") and Enzo Parent, LLC ("Enzo") (collectively, "Defendants") as to all claims asserted by Le, except his quantum meruit claim. Although summary judgment on this claim for the reasons relied on by Defendants was not appropriate, the court believed that the claim failed for other reasons. It, therefore, moved *sua sponte* for summary judgment as to this claim and allowed the parties to file briefs in response. Some of the arguments in Defendants' submission (Doc. 94) were broader in scope than the grounds identified by the court. Plaintiff was, therefore, allowed to file a response and submit evidence in support of his response. Thereafter, Defendants were allowed to file a reply.

The factual and procedural history and the applicable summary judgment standard are discussed at length in the court's March 31, 2019 memorandum opinion and order. For purposes of brevity, the court does not repeat verbatim here these facts or the legal standard applicable to summary judgments and, instead, limits its analysis to the facts and law necessary to decide whether

**Memorandum Opinion and Order – Page 1**

a genuine dispute of material fact exists regarding the elements of Plaintiff's remaining quantum meruit claim. After considering the parties' briefs, admissible summary judgment evidence,[1] and applicable law, the court determines that Defendants are entitled, as a matter of law, to judgment on Plaintiff's remaining quantum meruit claim, and **dismisses with prejudice** this claim.

## I.     Requirements for Quantum Meruit Claims Under Texas Law

In response to Defendants' summary judgment motion, Plaintiff clarified that his quantum meruit claim is based on promised pay in the form of severance and a retention bonus, and he contended that he was entitled to recover on his quantum meruit claim under the Texas law if the court determined that his contract claim based on these same grounds failed.

Quantum meruit is an equitable theory of recovery based on an implied agreement to pay for benefits received. *Heldenfels Brothers, Incorporated v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). "'The purpose of this common law doctrine is to prevent a party from being 'unjustly enriched' by 'retain[ing] the benefits of the . . . performance without paying anything in return.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)). The right to recover under a theory of quantum meruit is independent of any contract, *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990), because "[r]ecovery on an express contract and on quantum meruit are inconsistent." *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964). The existence of a valid, express contract that "covers

---

[1] In moving *sua sponte* for summary judgment, the court initially directed the parties to limit their citations to evidence in the existing summary judgment record, the scope of which was determined by the court's March 31, 2019 memorandum opinion and order and rulings regarding a number of expert issues and other procedural matters. Subsequently, however, the court allowed Plaintiff to submit new evidence in support of his most recent response for the reason noted that was not limited to the existing record.

the subject matter of the parties' dispute, therefore, generally precludes recovery under a "quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).

To recover based on a theory of quantum meruit, the plaintiff must prove:

(1) valuable services were rendered or materials furnished;

(2) for the person sought to be charged;

(3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and

(4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.

*Hill*, 544 S.W.3d at 732-33 (citing *Vortt Expl. Co.*, 787 S.W.2d at 944). "The measure of damages for recovery under a quantum-meruit theory is the reasonable value of the work performed and the materials furnished." *Hill*, 544 S.W.3d at 733 (citation omitted). Evidence of the reasonable value of services or work performed is, therefore, required to recover based on a theory of quantum meruit. *M.J. Sheridan & Son Co., Inc. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 625 (Tex. App.—Houston [1st Dist.] 1987, no writ); *see also Air Conditioning, Inc. v. L.E. Travis & Sons, Inc.*, 578 S.W.2d 554, 556 (Tex. Civ. App.—Austin 1979, no writ) (distinguishing proof required for contract damages versus quantum meruit damages); *Four Points Bus., Inc. v. Rojas*, No. 01-12-00413-CV, 2013 WL 4676314, *4 (Tex. App.—Houston [1st Dist.] 2013, no pet. h.).

## II. Discussion

The court previously concluded that summary judgment based on Defendants' argument regarding unpaid severance was not appropriate because no valid written severance agreement exists. Absent a valid contract, Defendants were also not entitled to summary judgment on Plaintiff's

quantum meruit claim on this ground. In addition, the court noted that Defendants had not addressed Plaintiff's contention that his quantum meruit claim is also based on a retention bonus. The court, nevertheless, had a number of concerns regarding the viability of Plaintiff's quantum meruit claim.

The first of these was whether Le could satisfy the first element of his quantum meruit claim—that valuable services were rendered or materials furnished—or whether he could establish the reasonable value of those services or materials. In addition, the court noted that it appeared that Plaintiff was attempting to hold Defendants to an alleged promise to pay severance while avoiding the reciprocal noncompetition duty that could be reasonably inferred from former Exeter Chief Executive Officer ("CEO") Mark Floyd's ("Floyd") July 18, 2013 e-mail and subsequent July 25, 2013 letter offer. Regarding Le's quantum meruit claim based on a retention bonus, the court also noted that there was no indication he had performed any "additional tasks of handling the restructuring of the branches and RIF layoffs" between January 2015 and February 23, 2015, or did anything other than what he was already being compensated to do under his annual salary as Exeter's Chief Human Resources Officer or CHRO during this time. Pl.'s Summ J. Resp. App. 121. Even if Le could establish that he partially performed, the court questioned whether he could establish the reasonable value of any such work performed by him, as it agreed with Defendants that he was precluded from presenting any evidence of damages regarding the unpaid retention and additional equity allegedly promised for failure to disclose it. The court, therefore, moved *sua sponte* for summary judgment on these grounds as to Plaintiff's quantum meruit claim, which were briefed by the parties (Docs. 93, 94).

Defendants summarized their response to the court's sua sponte motion as follows:

> Despite his misrepresentations causing this Court to waste judicial resources and for Defendants to incur unnecessary fees and expenses, Le seeks equitable relief through quantum meruit to collect a retention bonus and a severance. Defendants are entitled to summary judgment on Le's continued pursuit of his baseless claims as:
>
> 1. Le cannot present competent evidence (and none exists) of the purported retention bonus' amount.
>
> 2. Le provided no additional services to earn an alleged retention bonus.
>
> 3. Le refused to sign the Severance and Non-Compete Agreement on which he bases his severance damages calculation and, therefore, Defendants were never on notice he expected a severance.
>
> Additionally, Enzo Parent, LLC, is entitled to summary judgment as no evidence is presented it was involved with either the alleged retention bonus or severance.

Defs.' Resp. 1 & n.1 (Doc. 93). Regarding the latter contention, Defendants further assert:

> Le muddies the waters in his brief. *Compare* Doc. 30, p. 19, ¶ 35 ("it is undisputed that Exeter failed to pay Le the Severance Component and the Retention Bonus and Enzo failed to pay Le the Profits Interests Component …") with *id.*, p. 20, ¶ 38 (referring to "Defendants" as the parties owing the claimed compensation). Regardless, no evidence supports finding Enzo responsible for any of these amounts.

*Id.* at 1 n.1. As this response by Defendants expanded slightly on the grounds articulated by the court, it allowed Plaintiff to address the matters in Defendants' response, and Defendants were permitted to file a reply (Docs. 101, 103).

### A. Retention Bonus

With respect to his quantum meruit claim to recover a retention bonus and additional equity,[2] Plaintiff argues that there is sufficient evidence to create a genuine dispute of material fact:

---

[2] The court refers collectively to Plaintiff's claim to recover a "retention bonus and additional equity" as retention pay or retention bonus, as it is readily apparent that his quantum meruit claim based on a retention bonus encompasses his contention that he was also promised additional equity in 2015.

> 6. Exeter's promise of a retention bonus is also sufficient to state an actionable claim for quantum meruit. Plaintiff has presented evidence that Exeter induced Plaintiff to continue his employment with Exeter in January 2015 by offering Plaintiff a retention bonus and additional equity (the "Retention Bonus"). P. App. 106-107 (Le 235:8-25, 236:18-237:1). At that time, the CEO communicated to Plaintiff that he was part of a small group of critical talent that the CEO and Board of Directors wanted to retain to help move the business forward. P. App. 120. Once again, Plaintiff provided valuable services to Exeter based upon these representations, and Exeter knew that he expected to be compensated for them. That is sufficient evidence to survive summary judgment on Plaintiff's claim of quantum meruit.

Pl.'s Resp. 3 (Doc. 93). In the second round of briefing permitted by the court, Plaintiff continues to maintain that the following evidence establishes that Defendants offered him a retention bonus:

> [D]ocuments and testimony show that Le was offered a retention bonus by Tom Anderson, Exeter's former CEO. Anderson testified that he told Le that Le was part of a group of executives that were going to be awarded a retention bonus and additional equity. Supp. App. at 17 [Anderson Dep. 262:1-6]. After that conversation, Le emailed Anderson, thanking Anderson for the retention bonus and providing a document template for the retention bonus being given to the group of executives. Supp. App[.] at 18-19 [Email]. Documents produced by Exeter confirm that the other Exeter executives at Le's level, meaning personnel who reported directly to the CEO, received bonuses. Supp. App[.] at 20-39 [Retention Bonus Letters]. The above evidence shows that Le was offered a retention bonus and that the offered bonus had value. This is sufficient to raise a genuine issue of material fact at this stage.

Pl.'s Resp. 7 (Doc. 101). Plaintiff further asserts with respect to his quantum meruit claim based on severance and retention pay that he "is not required to prove the exact value of services to survive summary judgment, and there is more than sufficient evidence from which a reasonable jury could reach a valuation [determination]." Pl.'s Resp. 3 (Doc. 93).

Le is correct that he is not required to prove the exact value of services performed to survive summary judgment, as Texas law only requires evidence of the *reasonable* value of services or work performed to recover based on a theory of quantum meruit. *M.J. Sheridan & Son Co., Inc.*, 731 S.W.2d at 625. This argument, however, fails to address the issue raised by the court as to whether

Le can establish the reasonable value of any such work performed by him in light of Defendants' prior summary judgment argument that he should be precluded from presenting *any evidence* of damages regarding a retention bonus for failure to disclose such damages.

The court previously addressed this precise issue at length in the context of Le's breach of contract claim and determined that exclusion of all of Le's evidence of damages, including his expert's testimony, with respect to his contract claim based on breach of a retention bonus agreement was warranted. *See* Mem. Op. & Order 99-102 (Doc. 92). As before, Le offers no explanation for his failure to disclose timely his damages calculations for his quantum meruit claim based on a retention bonus, even though he was given two opportunities to do so—first, in response to the court's *sua sponte* motion, and again, after Defendants noted the lack of a response by Plaintiff to this issue. *See* Defs.' Resp. 2 (Doc. 94). The court, therefore, determines, as it did before, that Le's disregard for the court's scheduling order and lengthy delay in disclosing his damages for this claim, long after expiration of the disclosure and expert designation deadlines, and approximately one year after Defendants moved for summary judgment, is inexcusable. *See id.* Accordingly, Le will not be allowed to present *any* evidence of damages regarding his quantum meruit claim against Defendants to recover a retention bonus. Absent evidence of the reasonable value of services or work performed, Le cannot raise a genuine dispute of material fact regarding this element.

The court further determines that, in failing to respond to the issue raised by the court regarding the disclosure of his retention bonus damages, Le has waived or abandoned the issue. *See Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to the defend claim in response to a motion to dismiss); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (explaining

that a party, in "opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue"). Having failed to respond to Defendants' contention regarding Enzo's nonliability for his quantum meruit claim to recover a retention bonus by identifying evidence regarding Enzo's involvement or legal authority under which it can be held liable as Exeter's parent company, Le has also waived or abandoned this issue. For these reasons, Exeter and Enzo are both entitled to judgment on Le's quantum meruit claim to recover a retention bonus.

B.     **Severance Pay**

In response to the court's motion, Plaintiff contends, for the following reasons, that there is sufficient evidence to raise a genuine dispute as to every element of his quantum meruit claim to recover unpaid severance:

> 4. First, there is evidence of element (a), that Plaintiff provided valuable services to Defendants by acting as their CHRO for a period of more than eighteen months after **Defendants promised to provide him with a severance in a negotiated amount of eighteen months' salary. P. App. 86-87 (Le 76:22-77:12).** The Texas courts have recognized a wide variety of services as satisfying this element of a claim for quantum meruit. *See, e.g., Vortt Exploration Co., Inc. v. Chevron USA, Inc.*, 787 S.W.2d 942, 945 (Tex. 1990) (seismic and surveying services); *Wilmer-Hutchins Indep. Sch. Dist. v. Smiley*, 97 S.W.3d 702 (Tex. App. – Dallas 2003); *Killion v. Lanehart*, 154 S.W.3d 183 (Tex. App. – Amarillo 2004, pet. denied) (legal services); *Tricon Tool & Supply Inc. v. Thumann*, 226 S.W.3d 494 (Tex. App. – Houston [1st Dist.] 2006, pet. denied) (shipping and delivery services). And the Courts have not required that the plaintiff prove the value of his services to the jury by any particular method or measure (certainly not at the summary judgment stage). *C.f., Vortt*, 787 S.W.2d at 945; *Killion*, 154 S.W. 3d at 188-90. **Here, the severance component of Plaintiff's compensation was discussed at length prior to Plaintiff's employment. P. App. 86-87 (Le 76:22-77:12). Le told Floyd that joining a private company contained a certain degree of "risk involved," and "asked to see if there could be some sort of protection provided should [his employment with Exeter] not work out." *Id.* (Le 76:22-77:12). Floyd responded by stating that Exeter had a "standard 18-month severance" that Plaintiff would be eligible for that would provide him protection should he be terminated**

> without cause. *Id.* **(Le 76:22-77:12).** Plaintiff understood that he was eligible for this Severance Component upon hiring without the need for additional documentation. P. App. 117. Thereafter, Plaintiff worked as Exeter's CHRO for a period of nearly eighteen months. That evidence to create a question of fact on the first element of Plaintiff's claim for quantum meruit. [sic] Plaintiff is not required to prove the exact value of his services to survive summary judgment, and there is more than sufficient evidence from which a reasonable jury could reach a valuation.
>
> 5. The same evidence creates at least a triable question of fact on the other elements of the quantum meruit claim: (b) that the services [w]ere provided for the Defendant: (b) the services or materials were provided for the defendant, (c) the defendant accepted the services or materials, and (d) the defendant had reasonable notice that the plaintiff expected compensation for the services. **Here, the services in question were as Defendant's CHRO for a period of nearly eighteen months pursuant to a promise to provide him with severance in an agreed-upon amount. P. App. 86-87 (Le 76:22-77:12).**

Pl.'s Resp. 2-3 (Doc. 93) (emphasis added). Le also asserts in a footnote:

> The Court's order noted concern that Plaintiff "appears [to be] seeking to hold Defendants to an alleged promise to pay severance while avoiding, for example, a reciprocal noncompetition duty . . ." Order at 115. In fact, Exeter required Plaintiff to sign a non-competition agreement as a condition of his awarded equity, separately from the proposed written severance agreement. *See* P. App. 55-73.

*Id.* at 2 n.3. In his recently-filed brief, Plaintiff contends that Defendants were on notice that he still expected to recover severance pay even after declining to sign the Severance and Non-Compete Agreement. He also contends that he was subject to some of the terms, restrictions, and conditions in the Severance and Non-Compete Agreement, to the extent such terms, restrictions, and conditions were discussed prior to his employment and agreed to him at the time he signed the "Offer Letter." Pl.'s Resp. 4 (Doc. 101). Plaintiff further asserts that Defendants should be estopped from now arguing that there was no agreement to pay him severance because "[t]he recruiting firm's report, Le's testimony, the July 18, 2013 email, and the Offer Letter show that severance was an important

part of the compensation package negotiated during the recruitment period. *See*, Dkt. No. 33-2 at 42, 50, and 86-87 [Le Dep. 76:22-77:15]; Supp. App. at 7." *Id.* at 5-6 (Doc. 101).

As pertinent here, Defendants argue, in their reply (Doc. 103) to Plaintiff's February 18, 2020 filing (Doc. 101), that Plaintiff's new estoppel theory should be disregarded, as it exceeds Defendants' prior filing (Doc. 94) in contravention of the court's order. Defendants further assert that "Le continues to rely on misrepresentations evidencing his unclean hands in seeking equity." Defs.' Reply 1 (Doc. 103). In addition, Defendants again contend that Le has not come forward with any evidence to establish Enzo's liability to pay him severance. The court agrees with Defendants.

Le relies on the deposition testimony below in support of his quantum meruit claim in an attempt to establish his entitlement to severance pay and show that severance was a key aspect of the negotiations regarding his compensation that occurred while he was being recruited by Exeter:

> Q: Now, what was your understanding of your eligibility for the severance package as a key employee at Exeter?
>
> Le: **I'm—I'm very clear on this. I shared with Mark Floyd that I had a very secure situation at Lennox**, and going into a organization that was private, that would launch a PE firm, there was a lot of risk involved. And I asked to see if there could be some sort of protection provided should this not work out.

Pl.'s Resp. 6 (Doc. 101) (citing Pl.'s Summ. J. Resp. App. 86-87 (Doc. 33-2), Le Dep. 76:22-77:15 (emphasis added). In his initial brief, Le cited this same deposition testimony five times. Pl.'s Resp. 2-3 (Doc. 93). In his recent brief, Le again relies on the same deposition testimony. Pl.'s Resp. 2 (Doc. 101).

According to this and other evidence, before Le joined Exeter, he used his employment at Lennox and his Lennox benefit package as a negotiating tool and leverage to obtain a more generous compensation package from Exeter that included, among other things, severance pay. He also led

Exeter to believe that his leaving Lennox to join Exeter was contingent upon Exeter agreeing to the additional negotiated compensation. Unbeknownst to Exeter, Le's employment with Lennox had already been terminated for cause.

The issue regarding Le's dishonesty in recruitment negotiations with Exeter and during the proceedings in this case was first brought to the court's attention when Defendants moved to exclude Plaintiff's expert testimony. Defendants argued that expert testimony regarding Le's Category I or Lennox damages should be excluded because Le had: (1) taken the position in this action that he was fraudulently induced by Exeter to leave Lennox to join Exeter; (2) testified untruthfully under oath in his deposition that he left Lennox because he was recruited by Exeter when, in actuality, he had already been terminated for cause according to the deposition testimony of his former immediate supervisor at Lennox, David Moon ("Moon"); and (3) verified his expert's report and damages calculation that included the Lennox damages that were based on his false allegations that he had been fraudulently induced to leave Lennox to join Exeter.

Instead of attempting to refute this argument and evidence by Defendants, Le, without explanation, responded that he was no longer seeking Category I or Lennox damages, and that his expert's report had been amended to remove these damages. Defendants, however, continued to maintain that Le's response and decision to abandon his request for Lennox damages ignored that he had "lied in his pleadings and under oath regarding his entitlement to any Lennox compensation," and that his "position until he was caught (and in his summary judgment brief, in part) was different." Mem. Op. & Order 52-53 (Doc. 92) (quoting Defs.' Reply to Mot. to Exclude 1-2). Defendants further asserted that, "[a]fter causing Defendants to engage in discovery regarding the 'Lennox money' he [claimed to have] walked away from to join Exeter, Plaintiff was forced to

**Memorandum Opinion and Order – Page 11**

abandon the claim because Lennox had previously fired him for cause and he did not quit his job at Lennox to go to work for Exeter" as he previously alleged and testified. *Id.*

In its prior opinion, the court noted Federal Rule of Civil Procedure 11(b)'s prohibition against a party or attorney filing or making deliberately false pleadings or arguments to the court and the consequences for violating Rule 11. Mem. Op. & Order 54-55. The court also noted that it was particularly troubled by Plaintiff's and his attorney's decision to abandon his Lennox fraud damages at this late stage of the case without attempting to respond to Defendants' evidence that he knowingly testified falsely and asserted factual contentions that he knew lacked evidentiary support, and, as a result, unnecessarily delayed the proceedings in this case and needlessly increased the cost of litigation. *Id.* at 55. The court, therefore, agreed with Defendants that Plaintiff's withdrawal of his fraudulent inducement claim and request for Lennox damages did not absolve him or his attorney. *Id.* Because Defendants had not sought sanctions against Plaintiff or his attorney in the form of attorney's fees or other sanctions, the court simply determined that Plaintiff's untimely supplemental and amended expert reports in which the Lennox damages were omitted were unauthorized, and it granted Defendants' motion to exclude Plaintiff's expert testimony regarding Category I or Lennox damages without commenting further on whether sanctions were appropriate, except to say that, at a minimum, the issue raised serious concerns. *Id.*

Notwithstanding the serious concerns previously expressed by the court, Plaintiff now takes a similar position with respect to severance pay in support of his quantum meruit claim—that Exeter agreed to pay him severance to offset or minimize his risk (and his concerns in this regard) in leaving his secure position at Lennox to join Exeter by providing him with protection in the event his employment with Exeter did not work out. Because "[r]ecovery in quantum meruit is based on

equity," the "party seeking an equitable remedy must do equity and come to court with clean hands." *Truly v. Austin*, 744 S.W.2d at 938 (citations omitted); *Breaux v. Allied Bank of Texas*, 699 S.W.2d 599, 604 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) ("When seeking an equitable remedy, a party must do equity and come to the court with clean hands."). Under Texas law, "the doctrine of unclean hands is an affirmative defense that applies to a party seeking equitable remedies." *Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) (quoting *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied)). "[T]he doctrine "should not be applied unless the party asserting [it] has been seriously harmed and the wrong complained of cannot be corrected without the application of the doctrine." *Id.* "The determination of whether a party has come to court with unclean hands is left to the discretion of the trial court." *Id.*

Equity does not support the requested recovery in quantum meruit in this case. Le has taken the position throughout this case that his compensation and benefits, including severance pay, were agreed to by Exeter in July 2013 as a result of recruitment negotiations to alleviate potential financial risks to him in leaving Lennox to join Exeter. Le, however, has yet to address or come forward with evidence to refute the deposition testimony of his former supervisor at Lennox, who testified that Le was fired by Lennox for cause before July 2013 and notified well before that time that his employment with Lennox was being terminated. He also failed to address Defendants' contention that "[d]espite *his misrepresentations* causing this Court to waste judicial resources and for Defendants to incur unnecessary fees and expenses, Le seeks equitable relief through quantum meruit to collect a retention bonus and a severance." Defs.' Resp. 1 (Doc. 93) (emphasis added). Given Defendants' evidence that Exeter was induced to hire and agree to pay Le severance under

false pretenses, the court further determines that Exeter has been seriously harmed, and the wrong complained of cannot be corrected without the application of the clean hands doctrine, particularly in light of Le's conduct throughout this litigation of continuing to misrepresent the same material facts in his pleadings, filings, and deposition testimony.

Unlike Le's estoppel argument that was raised for the first time in his recent brief,[3] Defendants: (1) pleaded the defense of unclean hands; (2) developed facts supporting the defense through discovery regarding Le's deceit about the status of his employment with Lennox during recruitment negotiations and misrepresentations in his pleadings and deposition; (3) moved to exclude Le's expert testimony regarding Lennox damages based on these facts; and (4) argued again in response to the court's *sua sponte* motion that Le was continuing to rely on "misrepresentations" (Doc. 94) in support of his request for equitable relief in the form of quantum meruit.[4] In ruling on Defendants' summary judgment motion, the court also put Le on notice of its serious concerns regarding his (and his attorney's) conduct, (Mem. Op. & Order Doc. 92) and subsequently gave him

---

[3] Le's estoppel theory was raised for the first time during the second round of briefing in connection with the court's *sua sponte* motion for summary judgment on his quantum meruit claim. A claim or theory of relief that is not raised in a party's pleadings but, rather, is raised only in response to a motion for summary judgment is not properly before the court. *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990). Moreover, while the court allowed Le to file a response to address arguments by Defendants that it believed were outside the scope of the its *sua sponte* motion, it expressly ordered that "[a]ny response by Plaintiff shall be limited to the matters in Defendants' submission (Doc. 94)." Order 1 (Doc. 99). Accordingly, the court will not consider Le's new estoppel theory in ruling on his quantum meruit claim, as this appears to be yet another attempt by him to "unnecessarily complicate, confuse, and delay the proceedings in this case by creating a continually moving target." Mem. Op. & Order 12 (Doc. 92).

[4] Although Defendants did not use the term "unclean hands" in their response to the court's *sua sponte* motion, it is readily apparent from their contention regarding Le requesting equitable relief in the form of quantum meruit "[d]espite his misrepresentations" (Doc. 94) that they are referring to the requirement that a party seeking equity must come to court with clean hands. Defendants also led with this argument in the first sentence of their response. Thus, while Plaintiff characterizes Defendants' response as "**Only Disput[ing] That They Were Not Reasonably Notified,**" he cannot reasonably claim he was unaware of the argument to avoid summary judgment on this ground. Pl.'s Resp. 1 (Doc. 101) (discussing and referring to Defendants' Resp. (Doc. 94)).

an opportunity to address the issues raised in Defendants' response (Doc. 94) that included Defendants' contention regarding Le's misrepresentations. Order (Doc. 99).

Notwithstanding the foregoing, Le continues to assert in both of his recent submissions that severance was a key component of his negotiated compensation with Exeter and cites his own deposition testimony to show that protection in the form of severance pay was clearly sought by him and agreed to by Exeter's former CEO during his recruitment because he "*shared with Mark Floyd that [he] had a very secure situation at Lennox*" and expressed that he needed severance pay in the event his employment with Exeter did "not work out." Pl.'s Resp. 2-3 (Doc. 93) (citing Pl.'s App. 86-87, Le dep. 76:22-77:15 (Doc. 33-2) (emphasis added)); Pl.'s Resp. 2, 6 (Doc. 101) (citing Pl.'s App. 86-87, Le dep. 76:22-77:15 (Doc. 33-2) (emphasis added)). Other evidence relied on by Le in response to the court's *sua sponte* motion and Defendants' summary judgment motion with respect to severance pay similarly indicates that he was not forthright in his negotiations with Exeter regarding severance pay and other compensation. *See* Pl.'s Supp. App. 7 (recruiter's July 2013 summary of Le's "Compensation Detail & Offer Framework," indicating Le's need for certain incentives and guarantees from Exeter regarding compensation to offset financial losses he would incur in leaving Lennox to join Exeter); Pl.'s Summ. J. Resp. App. 47-49 (July 2013 e-mail from Le to Floyd comparing his compensation and benefits at Lennox with that offered by Exeter and setting forth options to close the gap).

Le made a similar argument in response to Defendants' summary judgment motion, even after Defendants presented evidence that he had lied under oath in his deposition about the status of his employment with Lennox and reasons for leaving Lennox, made misrepresentations in his pleadings, and verified his expert's damages report that was based on the same pleadings:

**Memorandum Opinion and Order – Page 15**

### Severance Component – Defendants' Oral Misrepresentations

> 5. The Severance Component of Plaintiff's compensation was also discussed at length prior to Plaintiff's employment. **P. App. 86-87 (Le 76:22-77:12). Le told Floyd that he was leaving Lennox, a publicly traded company, and going to Exeter, a private company, which inherently contains a certain degree of "risk involved."** *Id.* **(Le 76:22-77:12). As such, Le "asked to see if there could be some sort of protection provided should [his employment with Exeter] not work out."** *Id.* **(Le 76:22-77:12).** Floyd responded by stating that Exeter had a "standard 18-month severance" that Plaintiff would be eligible for that would provide him protection should he be terminated without cause. *Id.* **(Le 76:22-77:12).** Plaintiff understood that he was eligible for this Severance Component upon hiring without the need for additional documentation. P. App. 117.

Pl.'s Summ. J. Resp. Br. 4 (Doc. 33-1). These arguments and evidence by Le, when viewed in the context of Moon's unrebutted deposition testimony, establish that Le, during the proceedings in this case and in his negotiations with Exeter regarding severance pay and other compensation, misrepresented his employment status at Lennox.

Moreover, as noted, Le has not attempted to explain his conduct or respond to Defendants' contentions regarding the propriety of his seeking equitable relief in the form of quantum meruit "[d]espite his misrepresentations." Defs.' Resp. 1 (Doc. 94). He also failed to address Defendants' contention regarding Enzo's nonliability for his quantum meruit claim to recover severance and, thus, has waived or abandoned these issues. *See Black*, 461 F.3d at 588 n.1; *Hargrave*, 710 F.2d at 1164.

For all of these reasons, Exeter and Enzo are both entitled to judgment on Le's quantum meruit claim to recover severance payment based on: (1) their unclean hands defense and Le's failure to address the effect of his misrepresentations on the equitable relief sought; and (2) Le's failure to address the issue regarding Enzo's involvement and liability for this claim.

## III. Conclusion

For the reasons herein explained, the court determines that Defendants are entitled, as a matter of law, to judgment on their affirmative defense of unclean hands and Plaintiff's remaining quantum meruit claim based on severance pay and a retention bonus. Accordingly, Plaintiff's quantum meruit claim is **dismissed with prejudice**. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 9th day of March, 2020.

Sam A. Lindsay
United States District Judge